## Bostwick *v.* Lewis.

1807.

### In the Court below,

BENJAMIN BOSTWICK, *Plaintiff;* WALKER LEWIS, *Defendant.*

THIS was an action on the case for subornation of perjury.

The declaration stated, that *Lewis*, the defendant, brought an action of trespass on the case against the plaintiff, and *Austin Nichols, Aaron Gregory, Ebenezer Smith,* and *Azor Ruggles,* charging them with a combination to defraud him in the sale of a tract of land in Virginia. The plan agreed upon, by the conspirators, and the means by which it was carried into effect, were particularly set forth in that action. *Nichols* was to be the ostensible owner of the land, and was to offer it for sale. The rest were to represent it as of an excellent quality, and to affirm, that *Nichols'* title was good. In order further to decoy *Lewis* into a purchase of a part, *Bostwick* was to appear as the purchaser of another part. *Gregory* was also to apply to *Lewis* to be let in for a small share of what he was about to purchase. They succeeded in their designs ; *Lewis,* purchased one fourth part of the tract, and paid *Nichols* for it the sum of 2,812 dollars 25 cents, which the others divided among themselves. It was then averred, that *Nichols* had no title ; that the land was of no value ; that all the representations of those defendants were false, and known by them to be so ; and that their whole conduct in relation to *Lewis* was in pursuance of a combination to defraud him.

That action came before the Superior Court ; when *Nichols* was defaulted, and the others pleaded severally, *Not*

No action will lie for suborning a witness to swear falsely in a former cause, whereby a judgment was obtained against the present plaintiff contrary to the truth and justice of the case.

BOSTWICK
*v*
LEWIS.

*guilty.* The jury found a verdict for *Lewis*, for the sum of 3,860 dollars, 90 cents, which was accepted, and judgment rendered thereon. Execution was afterwards taken out, and levied on the real estate of *Bostwick*, which was appraised, and set off, in part satisfaction, to the amount of 3,333 dollars, 35 cents. The declaration then stated, " That the " defendant, the then plaintiff in said cause, for the purpose " of maintaining said issue, on his part, and to prove the " then defendants in said cause were guilty, in manner and " form as he in his declaration had alleged, and were guilty " of the combination to decoy, cheat, and to defraud the then " plaintiff, as therein alleged, on or about the 10th day of " July, 1801, at Hanover, in the county of Luzerne, in the " state of Pennsylvania, wickedly, unlawfully, corruptly, and " with a view and design to deceive the court and jury, in " the trial of said cause, and to injure and ruin the plaintiff, " and the then other defendants in said cause, did, by suborn- " ation, procure one *Stephen Burritt*, of said Hanover, to " give his deposition in said cause ; and said *Burritt*, by " means of said unlawful and corrupt conduct and procure- " ment of the defendant, did, on the said 10th day of July, " give his deposition, and swear to the same before one *Mat-* " *thew Covell*, then a justice of the peace within and for said " county of Luzerne ; which deposition was legally taken " by said justice, and was read, used, and improved in the " trial of said cause before said Superior Court ; which de- " position is in the words and figures following, to wit :

" *Luzerne County, ss.*

" *Stephen Burritt* of Hanover, in said county, in the state " of Pennsylvania, being duly sworn, of lawful age, depo- " seth, and saith, that some time, on or about the 15th day " of January, 1796, as he was in the house of *Walker Lewis* " of Brookfield in Connecticut, one Saturday evening, about " 9 o'clock, came into said *Lewis's*, *Benjamin Bostwick*, " *Ebenezer Smith*, and *Azor Ruggles*, all of said Brookfield. " Said *Bostwick* and *Smith* then did offer to the said *Lewis* to " sell to him part of a large tract of land containing 45,000

" acres, lying in Virginia, which they had for sale, but
" *Austin Nichols* was to give the title ; which they would
" take a part of, in case said *Lewis* would join with them in
" the purchase. Said *Lewis* appeared to be very backward
" in the business. Said *Bostwick* and *Smith* continued to
" press hard on said *Lewis* to join them, and take a part of
" said land at one quarter of a dollar *per* acre, and further
" said, that one quarter of a dollar was the lowest price.
" Said *Bostwick* further told him said *Lewis*, that the land
" was very cheap at that price ; for he had made himself
" well acquainted with the business ; that he knew the land
" to be valuable and good; and the title good ; that they
" were not like some other lands, which had two or three
" titles to them ; and that the land was worth a great deal
" more money than they were going to give for it. He
" further said, that he knew where he could sell the land as
" soon as they could get it, and for a great deal more than
" they were to give for it ; and, in that way, continued to
" press hard on said *Lewis* to take part of said land. And
" said *Smith* further told said *Lewis*, that rather than the bar-
" gain should fail, he would take one third part of said land
" himself; for he knew it to be a valuable property. And
" said *Bostwick* and *Smith* urged hard on said *Lewis* to
" finish the bargain that night ; for, said they, another day
" will be too late, for the land is rising very fast. Said *Lewis*
" did then agree to take one quarter part of said tract of
" land. The deponent further saith, that by his watch, it
" was sometime after mid-night, when the bargain was
" agreed upon ;—that it was clearly his opinion, from the
" conversation that passed from them to said *Lewis*, and the
" high recommendation they gave the land, that there was
" a deception in the business. And further the deponent
" saith not.——*July* 10*th*, 1801.

" <i>Stephen Burritt</i>."

The declaration then averred, " That said *Burritt*, in
" giving said deposition, did, by the subornation, unlawful
" procurement, and sinister persuasion of the defendant,

K k k

" voluntarily, wilfully, and corruptly commit wilful perjury ;
" and that every statement made and contained in said *Bur-*
" *ritt's* deposition, was and is absolutely untrue, and false ;
" and the then defendant well knew, that at the time he pro-
" cured said *Burritt* to give said deposition, every state-
" ment contained in said deposition was, and is, untrue
" and false." It was further stated, " That the only ma-
" terial inquiry and dispute in said cause, before said
" court and jury, upon said trial, was, whether said com-
" bination, as stated in said declaration, was true, or
" not ; and the plaintiff, relying upon the innocence of his
" conduct relative to said Virginia lands, that no com-
" bination ever existed between the plantiff and said
" other defendants in said cause, to decoy, cheat, and de-
" fraud the defendant, the then plaintiff in said cause, as
" stated in said declaration, and knowing, that said *Burritt*
" was not present at the house of the defendant, on said
" Saturday evening, or at any other time when there was a
" conversation between the now plaintiff, said *Smith*, and the
" other then defendants in said cause, and the present defen-
" dant, the plaintiff and the other then defendants in said
" cause were not prepared, nor was it in their power, to
" meet, oppose, or disprove the deposition of said *Burritt*.
" And in the trial of said cause and issue, said court and ju-
" ry relied much upon the testimony contained in the depo-
" sition of said *Burritt* ; and said deposition was considered
" by said court and jury very material, and indeed conclusive,
" to prove the combination alleged in said declaration, and
" that the plaintiff and then other defendants were guilty in
" manner and form as the defendant, the then plaintiff, in
" his declaration had alleged ; and accordingly, said jury
" found and brought in their said verdict as aforesaid. And
" the plantiff says, that if said deposition had not been used
" and improved as aforesaid, upon the trial of said cause and
" issue, said jury would have found and brought in a verdict
" in said cause, that the defendants were not guilty in man-
" ner and form as the plantiff in his declaration had alleged,
" and that the defendants should recover their costs in said

" suit ; which verdict would have been accepted by said
" court. And the plantiff says, that there was no other evi-
" dence of any kind of the least weight used and improved
" upon said trial, to prove said combination, and that the de-
" fendants were guilty, except the deposition of said *Bur-*
" *ritt.* And the plaintiff says, that he and the other then de-
" fendants in said cause were never guilty of any combina-
" tion, or any other fraudulent practice, to decoy, cheat, or
" defraud the defendant, the then plaintiff, as stated in his
" said declaration. Now the plantiff says, that by means of
" the wicked, false, fraudulent, and corrupt conduct of the
" defendant in the premises, the plaintiff is stripped of the
" whole of his property ; that he has lost a large bill of
" costs, which he should have recovered by the verdict of
" said jury, had it not been for the aforesaid fraudulent and
" corrupt conduct of the defendant ; and has been put to
" great trouble and expense, to his damage," &c.

The defendant pleaded *Not Guilty ;* and the jury found a
verdict in his favour.

On the trial, the plaintiff, for the purpose of proving
that *Burritt* had sworn falsely in his deposition, and that the
defendant, at the time of taking and using that deposition,
knew that *Burritt* had been guilty of perjury in swearing to
the truth of it, moved the court to be permitted to ask *Azor
Ruggles,* a competent witness, the following questions :

" 1. Was not the meeting at *Walker Lewis's,* which was
" testified about by said *Burritt,* had at the instance and re-
" quest of said *Walker Lewis* ?

" 2. Was you, *Azor Ruggles,* on the evening of the 20th
" or 21st of January, 1796, at the house of *Benjamin Bost-*
" *wick ;* did you go thither at the request of any person ;
" and if so, at whose request ?

1807.

BOSTWICK
*v.*
LEWIS.

" 3. Was not *Walker Lewis* the first person that ever
" gave you any information of the existence of such a war-
" rant as that which *Ebenezer Smith* had, and that *Ebenezer*
" *Smith* had it for sale ?

" 4. Did not *Walker Lewis*, at the house of *Benjamin*
" *Bostwick*, on the evening of the 20th, or 21st of January,
" 1796, urge you to call and see him on the said land busi-
" ness, at his the said *Lewis's* own house, on Saturday night
" following ; and did you not go with *Benjamin Bostwick*
" to said *Lewis's* on Saturday evening, in pursuance of said
" *Lewis's* request ?"

And for the purpose aforesaid, the plaintiff likewise moved
the court to be permitted to ask *Ebenezer Smith*, a compe-
tent witness then at the bar of the court, the following
questions :

" 1. Did not *Walker Lewis* apply to you respecting the
" said land warrant, before you ever said a word to him
" about it ? Please to relate the conversation which took
" place between you and *Walker Lewis* respecting the said
" land warrant.

2. " Did not *Walker Lewis* apply to you, *Ebenezer Smith*,
" and offer you a sum of money, provided you would testi   f
" for him in a certain cause, which he was about to com-
" mence against *Benjamin Bostwick* ?"

These questions were objected to, by the defendant, as
being irrelevant ; and were, on that ground, excluded, by
the court.

The plaintiff filed his bill of exceptions ; and thereupon
brought the case before this court, assigning the exclusion
of the evidence offered, as cause of error.

*R. M. Sherman,* for the plantiff.

1. The evidence ought to have been received. It does not appear to have been *irrelevant ;* and the testimony of a competent witness is always to be received, unless its irrelevancy is made to appear, by the party who takes the exception. Such has been the practice in the courts of this state, and in the Circuit Court of the United States. It is not necessary, that the application of the testimony to the case should be precisely pointed out ; for this would defeat the most beneficial method of drawing testimony from a reluctant witness, or of detecting a false one.

But some of the questions were obviously relevant. *Burritt's* deposition represented *Lewis* as very backward in the business ; and that the proposition was new to him. The object of the questions put to the witnesses, was, to prove, that *Lewis* was active in the business from the beginning ; and that the meeting at his house, on Saturday night, took place at his own solicitation. This would not only shew, that *Burritt's* deposition was false, but that *Lewis* must *have known* it to be so.

2. But the principal point, which, it is understood, is to be made in this case, is, whether the plantiff, by his own shewing, is entitled to recover ? For, if the judgment, on the whole case, is now, what it ought to be, this court, we admit, will not reverse it, because the evidence was improperly excluded.

The first objection to this action is, that it attacks, in a collateral manner, the validity of the former judgment. But that objection is not applicable to this case. The sustaining of this action does not impugn the former judgment. It casts no imputation upon the court or jury. The evidence of *Burritt's* perjury was not before them. The ground of our complaint is, that the defendant, by his corrupt and wicked practices, has procured a *valid* judgment against us,

1807.

BOSTWICK
v.
LEWIS.

which has taken from us our property, and subjected us to great trouble and expense. *Bostwick's* land was taken, and set off to *Lewis*, in satisfaction of the former judgment. But a recovery in this case will not affect *Lewis's* title. He will still hold his land, and we shall recover our damages. What such damages shall be, does not depend entirely upon the amount of the former judgment. We have, besides that, a sufficient *gravamen* to support the action. An additional reason, why this objection should not prevail, is, that it would suffer the defendant to take advantage of his own wrong.

Another and broader objection is, that an action at common law does not lie for perjury. It is very reasonable, that such an action should lie ; there is an injury to one person by the wrong act of another ; the court will, therefore, require very pointed authorities to be produced before they hold otherwise. The only cases, in which it has been said, that this action will not lie, are *Damport* v. *Sympson*, (a) and *Eyres* v. *Sedgewick*. (b) In the former, the alleged perjury was *a mere matter of opinion*. There was, therefore, sufficient reason, why *that* action should not be sustained ; and the reasons given by the three judges, who differed from the other, were *obiter dicta*. In both cases, the reasons are absurd, as they go to prove equally, that no *indictment* will lie. But however the English authorities may stand, such actions have unquestionably been sustained in our own courts. The case of *Hanford* v. *Pennoyer*, (c) decided by the Superior Court, in *Fairfield county, August Term*, 1802, on a writ of error, was, in principle, precisely like the present. In the reasons of the court, all the objections are taken up, and obviated. That decision ought not to be departed from.

(a) *Cro. Eliz.* 220.

(b) *Cro. Jac.* 160.

(c) See a correct report of this case, by *Ruggles, arguendo,* in *Smith* v. *Lewis,* 3 *Johns. N. Y. Term. Rep.* 160.

*Daggett* for the defendant.

The plaintiff in error contends for a reversal of the judgment on the following ground, that the testimony rejected by the court was legal ; and relevant to the issue on trial. We answer,

1. The testimony must *appear* on the bill of exceptions to have been relevant, or this court will not reverse.(a)

2. The testimony is not apparently relevant. It might, indeed, have borne on the point ;—it might not. This court cannot say, that answers to the proposed inquiries would have proved, or conduced to prove the facts in issue. Other facts which had been proved, or which the plaintiff offered to prove, by which the relevancy of this testimony might be made apparent, should have been stated.

3. However this point may be, we contend, that the declaration is wholly insufficient ; and therefore, that no recovery can be had ; and of course, that the judgment will never be reversed, even if an error has been committed in the interlocutory proceedings.

This action seeks a recovery in damages against the defendant, for obtaining a judgment against him the plaintiff, by subornation of perjury. The judgment is now in full force ; and, according to Lord COKE, imports absolute verity. The facts controverted on the former trial are *res judicatæ ;* and it is not competent for a party to that judgment to question them in this action. A writ of error, or a petition for a new trial, are the appropriate remedies against judgments ; but it is not competent for a defendant, in any form of action, to overturn a judgment regularly had, or to defeat the party prevailing of its benefits. This is equally opposed to sound principle, and to the rules of law.

(a) 1 *Cranch* 132.

This will be further apparent, if we consider what damages, if any, are to be recovered. The declaration complains of a loss of the whole amount which *Lewis* recovered of *Bostwick.*—If any thing must be recovered, that sum is undoubtedly the rule ; but it would be most unjust to take the whole amount from *Lewis*, for suborning a witness, if the fact to which the witness swore was true, and was proved by other witnesses.—That it was true, *Bostwick* can never deny, so long as that judgment remains in force ; for thereby it is rendered certain. The counsel for the plaintiff cannot proceed upon any ground, except this, that the merits of the former judgment are to be re-examined in this suit ; which, it is believed, is a great absurdity.

4. This action for suborning a witness is not known to the common law, but opposed to it. The plaintiff's only remedy is by action on the statute.(*d*)

By THE COURT, unanimously,

The judgment was affirmed.(*e*)

(*d*) *Kirby* 7, *Page* v. *Camp*. *Owen* 158. *Cro. Eliz.* 920, *Damport* v. *Sympson*. *Cro. Jac.* 601, *Eyres* v. *Sedgewicke*.

(*e*) *Smith*, one of the defendants in the former suit, and who had been compelled to satisfy a part of the judgment, brought a similar action against *Lewis*, in the state of New-York ; which was brought before the Supreme Court, on a writ of error, *May Term*, 1808 ; and after a full and able discussion at the bar, and by the court, it was held unanimously, that the action was not sustainable. 3 *Johns.* 157.