JACKSON, *ex dem.* HENDERSON, *against* DAVENPORT.

THIS was an action of ejectment, commenced in *May*, 1818, to recover part of lot No. 40, in the town of *Ulysses*, and was tried at the *Tompkins* circuit, in *June*, 1819, before Mr. Justice *Woodworth*. The plaintiff gave in evidence, (1.) a patent to *Alexander Kidd*, a soldier, for lot No. 40, in the township of *Ulysses*, dated *July* 8, 1790. (2.) A deed from *Alexander Kidd* to *Isaac Bogart*, dated the 12th of *January*, 1788, as follows : " Know all men by these presents, that I, *Alexander Kidd*, of the county of *Albany*, for the consideration of nine pounds, have granted, bargained, sold, assigned and set over unto *Isaac Bogart* of the city of *Albany*, the bounty or gratuity of lands given and granted unto me, the said *Alexander Kidd*, by any resolution of the congress of the *United States*, and by any resolutions or laws of this state, for my services as a private in the troops of this state, in the service of the *United States*, in the regiment commanded by Colonel *Gose Van Schaick;* and do empower *Henry I. Bogart* and *John Bogart,* or either of them, my true and lawful attorneys and attorney, for me and in my name, to grant, bargain and convey the same to the said *Isaac Bogart*, his heirs and assigns, in case the same shall be deemed necessary, upon the grants having passed the seal of this state, for the lands aforesaid. Witness my hand and seal," &c. " Witness, *John Bush.*" This deed was proved on the 30th of *September*, 1790, before *Jeremiah Lansing*, a master in chancery; and again, on the 27th of *April*, 1818, before *Bowen Whiting*, master in chancery, when the witness who was present to make the proof was identified by a witness known to the master: the deed was also proved,

*K* a soldier, entitled to military bounty lands, by a deed, dated *January* 12th, 1788, granted, bargained and sold, for a valuable consideration, to *B.* all the bounty lands to which he was entitled ; and in the same deed empowered *A.* as his attorney, for him, and in his name, to grant, bargain and convey the same to *B.* his heirs and assigns, in case the same should be necessary, upon the grants having passed the great seal of the state, for such bounty lands. On the 25th of *February*, 1792, *K.* by deed, for a valuable consideration, granted, bargained and conveyed his same bounty lands to *C.* his heirs and assigns forever: And on the 9th of *February*, 1802, *A.*, as the attorney of *K.* in his name, executed a release to *B.* in fee, pursuant to the power contained in the first deed: *Held*, that the

deed from *K.* to *B.* conveyed a life estate only ; and that *K.* having conveyed to *C* , before the execution of the power given to *A.*, all his reversionary interest, *C*, as a *bona fide* purchaser, without notice, became seised of the legal estate in the premises, on the death of *B.*

Where the title of the lessor, in ejectment, being a *life* estate, ends before the trial of the cause, the plaintiff, though he cannot turn the defendant out of possession, is entitled to judgment, so as to enable him to recover the *mesne profits*, but with a perpetual stay of the writ of possession.

by the same subscribing witness, before *Elijah Miller*, first judge of the county of *Cayuga*, on the 5th of *May*, 1818, and recorded in the office of the clerk of that county on the 6th of *May*, 1818. · (3.) A deed from *Isaac Bogart* for the same lot to *Theodosius Fowler*, dated *July* 2, 1791, registered 30th of *April*, 1795, as noted on the copy produced, and recorded *February* 28th, 1818. (4.) A deed from *Theodosius Fowler* to *William Henderson*, the lessor of the plaintiff, for the same lot, dated *October* 4, 1792; recorded *August* 14, 1818. (5.) A release in fee from *Alexander Kidd*, by his attorney *Henry I. Bogart*, to *Isaac Bogart*, for the lot in question, dated 9th of *February*, 1802 ; acknowledged 10th of *August*, 1808, but not recorded. *Isaac Bogart* died in *September*, 1818.

The defendant gave in evidence, (1.) a deed from *Alexander Kidd* to *Lemuel Cobb*, dated *February* 25, 1792, for the lot in question, as follows : " Know all men by these presents, that I, *Alexander Kidd*, of the county of *Morris*, in the state of *New-Jersey*, for the consideration of the sum of ten pounds, current lawful money of *New-Jersey* aforesaid, do give, grant, bargain, sell, aliene, release, enfeoff, convey and confirm unto *Samuel Cobb*, of the same place, and to his heirs and assigns for ever, all my bounty lands, viz. five hundred acres due to me from the state of *New-York*, and one hundred acres due from the *United States ;* also, all my right and title, interest, claim and demand to the warrants and rights to land for my services in the troops raised in the said state of *New-York*, in colonel *Gose Van Scoyke's* regiment, together with all and singular the profits, privileges and appurtenances to the said lands, warrants and premises belonging : to have and to hold unto the said *Samuel Cobb*, his heirs and assigns, all the above granted and bargained land and premises, with the appurtenances to the same. In witness whereof," &c. " Sealed and delivered in presence of *Thomas Van Winkle—Peter Van Winkle*." This deed was proved on the 12th of *March*, 1795, before *John Ray*, a master in chancery, by *Peter Van Winkle ;* and before *David Hyde*, a master in chancery, on the 12th of *June*, 1813, by *Thomas Van Winkle;* and recorded in the office of the clerk of the county of *Cayuga, June* 12th, 1813, with the soldier's

discharge, dated 8th *June*, 1783, under the hand of the commander in chief of the army of the *United States*. (2.) A deed from *Samuel Cobb* to *Moses Davenport*, the defendant, for 200 acres of the same lot, being the premises in question, dated *January* 31, 1815, for the consideration of 1000 dollars; recorded 16th *February*, 1815. (3.) A release from the widow of *A. Kidd* to the defendant, of her right of dower, dated 14th *February*, 1816.

The defendant then called on the plaintiff to show that the deed from *Kidd* to *Bogart* was deposited, previous to *May* 1, 1795, with the Clerk of the County of Albany, in pursuance of the provisions of the " act for registering deeds and conveyances, relating to the military bounty lands," passed *January* 8, 1794, and the act to amend the same, passed *March* 27, 1794. The counsel for the plaintiff contended, that the exemplifications of the record and proofs thereof, produced and read in evidence, were sufficient proof of that fact; and the question was reserved by the judge.

*Cornelius Davenport*, the father of the defendant, died about two years before the trial; and his widow, who was produced as a witness, testified, that more than 22 years before, her husband made a contract with *Nathaniel Williams*, in *New-Jersey*, for lots No. 33 and 40, at 2 dollars per acre, and paid him 500 dollars, and took a bond for a deed; that he entered on the lot 22 years ago, and continued in possession, holding under this contract, and paying taxes, until his death. The bond was not produced. The witness said that she had seen it and heard it read, and had made search and inquiry after it, but could not find it. The plaintiff's counsel objected to the parol evidence of the contents of the bond; but the judge admitted it, subject to all exceptions; and he ruled that it was not necessary for the defendant to show any written evidence of the colour, or claim of title, under which he took possession; but that showing an actual occupation, for twenty years, claiming title, was sufficient to constitute an adverse possession. Another witness testified, that *C. Davenport* was in possession of lot No. 40, above twenty-two years before the trial, and claimed it to be his property, saying that he had purchased it of a person in *New-Jersey*; and that *C. D.* built a house and

ALBANY,
August, 1820.

JACKSON
v.
DAVENPORT.

barn on the lot, and his son, the defendant, made improve‑ ments from year to year.

A witness for the plaintiff testified that before the defendant purchased of *Cobb*, he had taken a lease, for a num‑ ber of years, of *Cobb*, and that he held under that lease when he made the purchase, and that he paid the rent to *Cobb*. That he knew of *Bogart's* title or claim, and would not purchase, until he had ascertained who had the title, and that *C. Davenport* often told the witness the same. That the defendant married in 1801 or 1802. That about 10 or 12 years ago, the defendant, who was then in actual posses‑ sion of the premises, employed the witness to inquire for *Theodosius Fowler,* who derived title from *Bogart,* and was the owner of the lot. The counsel for the defendant con‑ tended that it was solely for the jury to decide, whether on this evidence, the plaintiff's right was not barred by an adverse possession. The judge directed the jury to find a verdict for the plaintiff, subject to the opinion of the Court, on all the points arising in the case: and the jury found a verdict for the plaintiff accordingly.

The cause was argued by *Oakley,* (Attorney General,) and *W. A. Duer,* for the plaintiff, and by *Collier,* for the de‑ fendant; but the reporter did not hear the arguments.

*For the plaintiff,* the following points were stated:—1. That there was not evidence of an adverse possession, suf‑ ficient to bar the plaintiff. (1 *Johns. Rep.* 156. 2 *Johns. Rep.* 230. 9 *Johns. Rep* 167. 174. 10 *Johns. Rep.* 475.)

2. That the proof as to the deposit of the deed from *Kidd* to *Bogart.* before the 1st of May, 1795, pursuant to the act. (1 *N. R. L.* 209. 211, 212. 217.) was sufficient.

3. That the deed from *Kidd* to *Bogart* passed the whole estate of *Kidd,* and the patent which was subsequently issu‑ ed to him enured to the benefit of the grantee, *Bogart,* (16 *Johns. Rep.* 495. 505.) as by the *act to carry into execution the concurrent resolutions of the legislature,* (*Sess.* 13 *ch.* 59. s. 5) the land became vested in the soldier, on the 27th of *March,* 1783.

4. Admitting even that *Bogart* did not, by the deed from *Kidd* to him, acquire an estate in fee; yet the subsequent

deed, executed by the attorney of *Kidd*, pursuant to the power contained in the first deed, enured to the benefit of *Bogart*, so as to vest in him the whole estate.   (3 *Johns. Ch. Rep* 550.   4 *Cruis. Dig.* tit. 32. *ch.* 16. *s.* 62, 63, 64, 65. 1 *Johns. Cases,* 81. 90.   2 *Johns. Rep.* 510.   13 *Johns. Rep.* 316.   2 *Burr.* 704.   *Doe* v. *Whitehead.*   1 *Saund.* 261. note 3.)

SPENCER, Ch. J. delivered the opinion of the court.   The lessor deduced a title to the premises in question under *Alexander Kidd*, a soldier, to whom the lot in controversy was granted, by virtue of a deed from *Kidd* to *Isaac Bogart*, dated the 12th of *January*, 1788, and sundry mesne conveyances down to the lessor.

The defendant deduced a title from *Kidd* to *Samuel Cobb*, by a deed, dated the 25th of *February*, 1792, for the same lot ; and by a deed from *Cobb* to the defendant, for 200 acres of the lot, being the premises in question, dated the 31st of *January*, 1815.

It has not been pretended that the defendant is concluded, by any relation subsisting between him, or *Cornelius Davenport*, his father, and the lessor, or those under whom he claims, from showing that the plaintiff has no title to recover ; or that the defendant, or his grantor, *Cobb*, has the title to the premises.

The deed from *Kidd* to *Isaac Bogart* conveys only a life estate.   It is a grant, for the consideration of nine pounds, to *Bogart*, of *Kidd's* bounty or gratuity lands, under any resolution or laws of this state, for his services, as a private in the troops of this state, in the service of the *United States*, in the regiment commanded by Colonel *Gose Van Schaick*, without any words of inheritance or perpetuity.   It constitutes *Henry I. Bogart* and *John Bogart*, or either of them, his true and lawful attorneys and attorney, for him and in his name, to grant, bargain and convey the same (his bounty lands) to the said *Isaac Bogart*, his heirs and assigns, in case the same should be deemed necessary upon the grants having passed the seal of this state for the lands aforesaid.

The power thus given was executed by a deed from *Henry I. Bogart* to *Isaac Bogart*, for the lot in question, by a

release, dated the 9th of *February*, 1802, which was acknowledged the 10th of *August*, 1808, but has not been recorded. It is to be observed, that the deed from *Kidd* to *Isaac Bogart* has been deposited pursuant to the act of the 8th of *January*, 1794, but has not been recorded. There is no evidence tending to show that *Cobb* had any notice of the deed from *Kidd* to *Isaac Bogart*, when he purchased and took his deed. This action was commenced in *May*, 1818, and *Isaac Bogart* died in *September* of that year.

The question then arises, whether, since the death of *Isaac Bogart*, the lessor, or *Cobb*, and those claiming under him, have the legal title to the premises ? This depends on the power contained in *Kidd's* deed to *Bogart*. It has been insisted, on behalf of the plaintiff, that the power, in this case, is coupled with an interest, and was irrevocable, so that *Kidd* had no interest left in him to convey. On the part of the defendant it has been urged, that the power being to strangers who had no interest in the land, notwithstanding it was contained in the deed to the person in whose behalf it was to be executed, it was a naked power collateral to the land. The question, as to powers, arose, and was finally decided in the Court of Errors, in the case of *Bergen and another v. Bennet*, (1 *Caines' Cases in Error*, 1.) Mr. Justice *Kent* delivered the opinion of the Court. He observed, that " a power simply collateral and without interest, or a naked power, is where to a mere stranger authority is given of disposing of an interest in which he had not before, nor hath by the instrument creating the power, any estate whatsoever. But when power is given to a person who derives under the instrument creating the power, or otherwise, a present or future interest in the land, it is then a power relating to the land." " The former power," he says, " is revocable by the grantor, at his pleasure, in his life-time, and is absolutely revoked by his death ; and the grantee of such a naked power, having no interest connected with the power, has, of course, no interest affected by the revocation." In *Hargrave & Butler's*, note, 298, to book 3d, of the first part of *Coke's Institutes*, it is said, that those powers which are given to mere strangers, that is, to persons who were not owners of the land, at the execution of the

instrument creating the power, and who do not take under it, either a present or future estate or interest in the land, are said to be collateral to the land ; those which are reserved to the owner of the land, or to a person deriving under the instrument creating the power, either a present or future estate or interest in the land, are said to be relating to the land. These principles are believed to be undeniable, propositions, perfectly well settled by adjudications, and admitted by every elementary writer on powers. Their application to the present case is obvious. *Henry I. Bogart* and *John Bogart*, who, or either of them, were authorized to make the conveyance to *Isaac Bogart*, were not owners of the land, at the execution of the instrument creating the power, and did not take under it a present or future estate or interest in the lands. They are, therefore, strangers, and, as to them, the power is collateral to the land. I can perceive no difference, in point of principle, whether the power is contained in the same instrument which gives a life estate to *Isaac Bogert*, or in a distinct instrument. The place where the power is found is not the test, but it is, that the same person who takes a present, or is to have a future interest in the land, is cloathed with authority by the owner of the estate, to make a further disposition of it. The attorneys in this case had no kind of interest in the particular estate conveyed, or in the further disposal of it. All their authority was derived from the deed, and the only interest they had was in the execution of the power. It was matter of entire indifference to them who had the estate, and this is the true character of a naked power. Had the deed, after giving the life estate, authorized *Isaac Bogart* to convey the premises in fee, for his own benefit, in consideration of the money received, that would have been a power coupled with an interest, irrevocable in its nature. But that is not the case. Although *Isaac Bogart* had an interest in having the power executed, *H. & J. Bogart* are strangers; and the interest that *Isaac* had in the power cannot be transferred to them, so as to give them an interest coupled with the power. As *Kidd* conveyed to *Cobb*, before the execution of the power, by the release to *Isaac Bogart*, the deed to *Cobb* revoked and superseded the

power. This is my view of the case. My brethren who agree in the result, consider this as an unexecuted authority; that the reversionary interest, after the deed from *Kidd* to *Bogart* resided in the former; that nothing restrained him from parting with that interest prior to the execution of the power by *H. & J. Bogart*, or one of them, and that, therefore, *Cobb*, being a *bona fide* purchaser, without notice, took the reversionary right of *Kidd*, and became seized of the legal estate, after the termination of *Isaac Bogart's* life estate in the premises.

The plaintiff's counsel have pressed upon the Court the case of *Fisher* v. *Fields*, (10 *Johns. Rep.* 495.) as deciding this cause. That case was decided on an appeal from the Court of Chancery, on the ground that the assignment to *Birch* passed the equitable interest of the soldier, and amounted to a declaration of trust; that after the patent issued, the soldier took as a trustee for *Birch;* and *Fields* having afterwards purchased of the soldier, with knowledge of the transfer to *Birch*, was a purchaser chargeable with the trust, and was as much bound to execute the trust as the soldier himself. The doctrine of that case would prevail, if the cause now pending was in a court of equity, and it could be shown, as it has not been done in this case, that *Cobb* had any notice, when he purchased, of the conveyance to *Isaac Bogart* by *Kidd*, and that the defendant had, also, notice of that conveyance when he purchased. At law, the legal title must prevail; but, on the facts in this case, tested by the decision in *Fisher* v. *Fields*, even in a court of equity, the plaintiff could not prevail, without proving notice of the conveyance to *Isaac Bogart*, both to *Cobb* and the defendant. This suit was brought before the termination of the life estate; and it appears by the plaintiff's own showing, not only that his estate is ended, but that the defendant has the reversionary interest. The plaintiff, then, has no title to turn the defendant out of possession; but he has a title to the mesne profits and the costs of this suit, and must, therefore, have judgment, to enable him to recover them.

This gives rise to the question of adverse possession; and without going minutely into an examination of the facts, we are of the opinion that to render a possession

hostile and adverse to the true owner, it must be under co-
lour or claim of title; that, in the present case, it was not
satisfactorily shown that the possession was adverse, until
a lease was taken of *Cobb*, which was within twenty years
before the commencement of this action, and that, conse-
quently, the plaintiff was not barred of his entry. There
must be a judgment for the plaintiff, with a perpetual stay
of the writ of possession.

ALBANY,
August, 1820.

JACKSON
v.
DAVENPORT.

WOODWORTH, J. dissented, on the ground, that a pow-
er from *Kidd*, the soldier, to *Isaac Bogart*, was coupled
with an interest. He said, that it was manifest from the
words of the instrument, that it was intended to convey all
the interest *Kidd* had in the lands; but as the legal title
had not then vested, and the transfer could only be of an
equity, a power was inserted authorizing *Henry I. Bogart*
to convey to *Isaac Bogart*. The legal operation of this
power he considered the same as if authority to convey
had been given to *Isaac Bogert;* that it was to every be-
neficial purpose such a power; it was to be exercised
for his benefit, was under his control, and came within the
spirit of the rule laid down in 1 *Caines' Cases in Error*, 15.
" That when power is given to a person who derives under
the instrument creating the power a present or future inte-
rest, it is, then, a power coupled with an interest." The
power, in this case, was well executed, and enured to the
benefit of the lessor of the plaintiff, who became seised of
an estate in fee, and was entitled to recover.

Judgment for the plaintiff, with a perpetual stay of the
writ of possession.