ANN ELIZA DOYLE *vs.* RUSSELL.

Where a prisoner, arrested by virtue of a criminal warrant indorsed pursuant
  to 2 *R. S.* 707, § 5, is discharged from arrest, by a justice of the peace of
  the county in which he is arrested, on entering into a recognizance before
  him, the warrant has spent itself, and the officer has no right to arrest the
  prisoner again, without new process. HOGEBOOM, J., dissented.
*Clark* v. *Cleveland,* (6 *Hill,* 349,) disapproved.

MOTION for a new trial, upon a case and exceptions. The
plaintiff sued this defendant and Nelson Beardsley jointly.
The complaint contained three counts. The first two counts
were for false imprisonment. The third and last count was
for malicious prosecution. The defendant, Russell, answered
separately, pleading a justification as a peace officer acting
under and by virtue of a warrant duly issued, &c. against the
plaintiff for petit larceny. The following facts appeared from
the testimony: The plaintiff had been a domestic in the em-
ployment of Beardsley. The day she left his house he missed
a *trunk* and other articles from his premises ; and made com-
plaint and procured a warrant from John O. Cole, Esq., po-
lice justice of Albany, against the plaintiff for petit larceny.

The defendant, Russell, was a deputy sheriff of Albany
county, and went with Beardsley to Schoharie county, where
the warrant was indorsed for service there, by R. Brewster, a
justice of the peace, and then delivered to Russell with in-
structions to arrest the plaintiff. They found the plaintiff,
with the trunk in her possession, in Cobleskill. The defend-
ant, Russell, arrested the plaintiff, and went with her before
Christopher Wetsell, a justice of the peace of Schoharie
county, where she entered into a recognizance to appear at
the court of sessions of Albany county, to be held on the sec-
ond Tuesday of September, 1857, and thereupon was dis-
charged from arrest, by said justice. No court was held or
appointed to be held for Albany county on that day. The
justice never returned the recognizance, but lost the same.
He did not indorse upon the warrant the proceedings had be-

Doyle *v.* Russell.

fore him.   The defendant Russell subsequently, and after the second Tuesday of September, 1857, by virtue of the same warrant, which he had in his possession, re-arrested the plaintiff in Albany county, and took her before J. O. Cole, the magistrate issuing the warrant.

The judge, among other things, charged the jury as a matter of law, that when Justice Wetsell assumed to discharge the plaintiff, upon the recognizance being taken before him, the warrant under which she was arrested had spent itself, and the defendant had no right to arrest her again without new process.   To which portion of the charge the defendant excepted. The defendant's counsel requested the court to charge that if they found from the evidence, that at the time of the second arrest, the defendant had good cause to believe the plaintiff had been guilty of the crime of larceny, the fact should be taken into consideration in mitigation of damages.   The court refused so to charge, but stated to the jury that they had a right to consider, in mitigation of damages, that the defendant Russell supposed the warrant was valid and authorized him to arrest her.   To which refusal the defendant's counsel excepted.   The counsel for the defendant further requested the court to charge, that if property was stolen from the defendant Beardsley, and he had cause to suspect the plaintiff to have committed the crime, it was not only his privilege, but it was also his duty as a citizen, to procure her arrest.   The court charged accordingly.   The jury found a verdict in favor of the plaintiff, against the defendant Russell, for $75.

*W. S. Hevenor,* for the defendant Russell.

*Fox & Holmes,* for the plaintiff.

GOULD, J.   There is really but one point to be considered in this case, as presented by the exceptions and points ; and that is, whether the warrant was spent by the first arrest, (in

Schoharie county,) and the action had thereon. If it was, the decision at the circuit was right; but if, notwithstanding what was there done, the warrant remained in force so that another arrest could be made under it, the second arrest was not false imprisonment. And as it is by no means well settled, on authority, that the warrant remained in force, for the second arrest, I propose to look into the circumstances attending the two arrests, for two purposes : 1st. Because in the cases referred to, the decisions have partly, if not chiefly, turned on the circumstances of each case; and 2d. Because, as the complaint is for malicious prosecution as well as for false imprisonment, those circumstances may throw light upon the *quo animo* of the proceeding; and even may have a very decided bearing on the right to recover on the count for false imprisonment.

It appears that the plaintiff, having left the service of Mr. Beardsley, (who was a deputy sheriff,) was followed to her home in Schoharie county, by himself and another deputy sheriff, with a warrant to arrest her for petit larceny, issued on his complaint that she had stolen his property to the value of some $4. She is arrested in Schoharie county, and taken before a magistrate to give bail to appear at the next court, having cognizance of the offense, to be held in Albany county. On the magistrate's asking what court that is, these two deputy sheriffs give him the information, specifying the proper court, but naming its term at a time when no term thereof was to be held. And she, and her bail, as well as the magistrate, in entirely good faith, perfect a recognizance for her appearance at Albany, on the day named; and on that day she and her bail travel some 40 miles to Albany, to appear and answer to the charge, but find no tribunal. On her return, and at the distance of some 14 miles from Albany, she is arrested on the same warrant, and with unnecessary and degrading force is brought back to Albany, imprisoned four days, tried before the justice who issued the warrant, and unhesitatingly acquitted. These circumstances are not all printed

in the case; (I suppose under the rule of putting in only what relates to the exceptions;) but they were on the argument stated on one side, and not contradicted on the other.

The arrest in Schoharie county was undoubtedly regular, and the magistrate there had authority to take bail; and the mistake, by means of which the recognizance was for a wrong day, was that of the complainant and the officer. So far, certainly, there is no attempt on her part to evade or escape justice; nor is there any such attempt in her attending with her bail, when required by the recognizance. Still there can be no doubt that the recognizance was inoperative, perhaps absolutely void; though I think there may be an error in the defendant's citation of authorities on this point. If void—and I am disposed to hold that it was—it was an escape, voluntary on the part of the officer *and the complainant;* and whatever public justice might require, the complainant could not object to his being put to the trouble of procuring a new warrant if he desired a further arrest.

I am referred to *Clark* v. *Cleveland,* (6 *Hill,* 349,) as covering the whole of the principle claimed by the defendant, and deciding the warrant to be in force, notwithstanding the first arrest. This case certainly so decides. But it cites cases which do *not* support it; and I am unable to accede to the justness of its reasoning; especially when the *civil* cases cited fail to sustain the analogy claimed; and the *criminal* ones are the other way. Hawkins (2 *Hawk. P. C. ch.* 13, *original sec.* 9) says, "If a constable, after he hath arrested the party by force of any warrant of a justice of the peace, suffer him to go at large, upon his promise to come again at such a time and find sureties, he cannot afterwards arrest him by force of the same warrant. However, if the party return and put himself again under the custody of the constable, the constable may lawfully detain him." And in this section is found most of the reasoning of the case in 6th Hill. The latter case (besides Hawkins) cites 1 *Esp. Rep.* 218, and *Peake's N. P. Cas.* 234, same case. It is more fully reported in Espinasse, where the

reporter says, " it appeared to be rather on the ground of the *plaintiff's having consented* that the warrant should *remain in force* until the second surety to the parish was perfected, than as holding the second arrest under the warrant to be legal." And Lord Kenyon (in giving the *nisi prius* decision, of which the reported case is a review on a motion, in banc, for a new trial,) says the warrant continued in force until the parish obtained the object of the original complaint. That in the case it appeared that that object had not been performed, as the plaintiff had not found two sureties, as he had undertaken, and that the second arrest was therefore justified by the warrant. And in the statement of the case it appears that " as he had undertaken" referred to the fact that at the time of the first arrest, the plaintiff " *had consented* that the first warrant should remain in force, till the bond was executed by the *second* surety." Thus this case goes a step beyond Hawkins, where the consent was required to the second arrest; but stops very far short of the case in 6th Hill; for which it surely is not an authority.

It seems to me that the doctrine of that case (6 *Hill*) is eminently dangerous to the citizen, as well as eminently calculated to make officers corrupt and arbitrary. The power to arrest, at the most annoying and oppressive time, and in the worst manner ; and voluntarily to let the prisoner go, without any understanding that he shall consider himself under arrest ; to extort money for so doing ; and then, with the same warrant, to be able to retake the prisoner against his will, and as oppressively as before, seems to me a doctrine so monstrous, that no argument, based on the blunders of officers or magistrates, as likely to leave public justice robbed of its subjects, can for a moment lead courts to sanction it. Were the point settled by a course of decisions, anywhere ; did it not remain standing upon a solitary case, which is itself not sustained by its citations, I might feel bound to submit, and to abide by the effect of the doctrine *stare decisis*, on the ground that what was so well settled must be right, although I might not

be able so to see it. But where the liberty of the citizen is concerned, and no hardship is imposed upon the law, by compelling it to see that its own officers are faithful and competent, I think I am justified in saying that the case may go to a higher tribunal for a decision which I cannot see it right to give.

It may, however, be proper, in view of the alleged peculiar circumstances of this case, (the tying &c.,) that I should add, that a decision that the warrant remained good for the second arrest, does not necessarily determine this case for the defendant. For it has been held by high authority, that " if cruelty, malice and oppression appear to have occasioned or *aggravated* the imprisonment, they shall not cover themselves with the thin veil of legal forms, nor escape under the cover of a justification, the most technically regular." (1 *Term R.* 536, '7.) From this case Espinasse, in his Digest, (*p.* 332,) quotes as a principle : " though the original arrest might be warrantable, *yet for any subsequent oppression or cruelty*, this action (false imprisonment) lies."

I should not grant a new trial.

HARRIS, J., concurred.

GOULD and HOGEBOOM, Js., dissented.

New trial denied.

[ALBANY GENERAL TERM, March 7, 1859. *Harris, Gould* and *Hogeboom*, Justices.]