HENRY CONNELLY, Respondent, v. JOHN McDERMOTT, Appellant.

(GENERAL TERM, THIRD DEPARTMENT, JULY, 1870.)

In an action against a police officer, for malicious prosecution, the plaintiff proved that while he was lawfully attempting to eject a disorderly person from his premises (a drinking saloon) to which the noise had attracted a crowd, the defendant came and arrested the disorderly person, who was taken before a magistrate and fined for disorderly conduct; that afterwards the defendant, though present and having personal knowledge of facts connected with the disturbance, made a complaint and obtained the plaintiff's arrest, from which, the complaint being groundless, he was discharged.—*Held*, that the question whether the arrest was without probable cause, was properly submitted to the jury.

The plaintiff also proved that the warrant for his arrest was issued and delivered to the defendant soon after eight o'clock in the evening returnable forthwith; that nine o'clock was the latest hour at night at which the plaintiff could have been taken before the magistrate whose office was but ten rods from the plaintiff's saloon, where some two hours after the warrant had been issued the plaintiff was arrested by a subordinate officer, to whom the defendant delivered the warrant, and imprisoned during the night; that seven years previously the defendant had threatened for some offence given, to remember the plaintiff.—*Held*, further, that the question of malice was properly submitted to the jury.

*Held*, further, that it was error to exclude evidence, offered by the defendant, to show that in making the arrest he had acted upon statements made to him as an officer, before the magistrate and subsequently, by persons present at the disturbance, that the plaintiff was more guilty than the person arrested, and their requests that he should be arrested; and that this was so notwithstanding the defendant had been shown to have personal knowledge of the facts.

THIS was an action for malicious prosecution, tried before a justice and a jury at the Albany May Circuit, 1868; a verdict of $100 was rendered for the plaintiff, and the defendant appealed from the judgment entered thereon.

It appeared on the trial, that on the 2d October, 1866, at about eight o'clock, P. M., a warrant was sworn out by the defendant before Harvey Clute, a police justice of Cohoes,

for the arrest of the plaintiff, charging him and one Arthur, with being disorderly, in that they, the said Arthur and Connelly did, in a loud, angry and boisterous manner, to the great disturbance of the public peace, make a loud noise to the great danger of life and limb. That the defendant, who was sergeant of police, took the warrant and placed it in the hands of a subordinate, who arrested the plaintiff thereon a few minutes before ten o'clock on the same evening, put him into the village lock-up, and detained him there until eight or nine o'clock the next morning, at which time the plaintiff was tried and acquitted of the charge. It appeared also that by a regulation of the police department, persons arrested were not to be brought before the magistrate after nine o'clock, P. M., that the magistrate's office was some nine or ten rods from the saloon, and that seven years previously the defendant had threatened to remember the plaintiff on account of some advantage obtained by latter over the former, at a political convention. The disorderly conduct charged against the plaintiff was this: The plaintiff was the proprietor of an eating and drinking saloon on Mohawk street, Cohoes. A few minutes before eight o'clock on the evening in question, a young man by the name of Hay came to the saloon and began to quarrel with a man by the name of Arthur; Hay being in the act of taking off his coat to fight Arthur, the plaintiff, who at the time was behind the bar, asked him to desist, and told him he would have no quarreling in his house; Hay took his coat off, and continuing to quarrel they told him to go out; Hay refused to go, unless he should be allowed to put his coat on, and persisted in his loud talking and hostile demonstrations toward Arthur; the plaintiff thereupon took hold of him by the breast and again told him he must go out; and on his refusal, the plaintiff pushed him a few feet toward the door, when the defendant arrested Hay and took him at once to the police office, a few rods distant, where Hay was arraigned, plead guilty, and was fined three dollars. The noise attracted a crowd. The defendant complained to the justice and was

examined on the trial of the plaintiff who was arrested as above stated. A motion was made to dismiss the complaint on several grounds, which was denied and exceptions taken. Requests were also made to the judge to charge the jury, which were refused and exceptions taken.

Evidence was offered by the defendant on the trial which was objected to and excluded, and exception taken by the defendant. The questions made, so far as material, are stated in the opinion. Judgment was entered for the plaintiff on the verdict, and the defendant appealed to the General Term.

*E. F. Bullard,* for defendant and appellant.

*J. F. Crawford,* for plaintiff and respondent.

Present—MILLER, P. J., POTTER and PARKER, JJ.

By the Court—MILLER, P. J. There was sufficient evidence of the want of probable cause for the prosecution, and arrest of the plaintiff, to authorize the submission of the case to the jury. The testimony of the defendant upon the trial of the plaintiff before the magistrate clearly shows, that there was no ground for the charges made in the warrant of arrest. According to this evidence the plaintiff was acting strictly in defence of his lawful rights, and protecting his place of business from the disorderly behavior of Hay. There was not the slightest appearance of disorderly conduct on the part of the plaintiff. As testified by the defendant upon the trial before the magistrate when arrested under the warrant, the plaintiff was entirely innocent of the charge alleged against him; and as defendant was present he ought to have known, and as the testimony shows, had personal knowledge of the falsity of the charges embraced in the warrant. Even if we may consider the testimony upon the trial of this action out side of the evidence of the defendant, upon the trial of the plaintiff under the warrant which was introduced, there is no such an apparent want of probable cause, as to justify the

court in dismissing the complaint, and the motion on this ground was properly refused. For the same reason, the court committed no error in refusing to charge that there was no evidence of a want of probable cause.

I am also of the opinion, that the court properly refused to dismiss the complaint upon the ground that there was no evidence of malice, and to charge this as matter of law. The delay in making the arrest of the plaintiff, after the warrant was issued, which was the means of incarcerating him over night, as well as previous threats, were circumstances to establish malice, which were proper for the consideration of the jury, and justified the submission of this question for their determination.

There was no error, I think, in refusing to charge, that if the jury believed that Connelly was holding Hay fast in the grocery, that there was probable cause to arrest him for that act. The fact of holding Hay fast, alone, and of itself, under the circumstances, might not show probable cause for his arrest; and as the judge had adverted in his charge to the facts connected with the transaction, and it was by no means, clear that the plaintiff thus held Hay fast, I concur with his remark, that he had charged as fully upon that subject as was required. It is quite evident, I think, that there was sufficient evidence to submit the case to the jury, and that upon none of the grounds urged, would the court have been justified in dismissing the complaint.

It is insisted that the court erred in rejecting the evidence offered, showing that persons who were present at the time of the occurrence, afterwards in the presence of the magistrate, informed the defendant in substance, that the plaintiff was equally guilty with Hay of a breach of the peace, and ought to be arrested, and that these persons followed him and made complaint to him, as a policeman, that he ought to go back and arrest the plaintiff as being more guilty than Hay. I think that this evidence was clearly competent for the purpose of showing, that the defendant acted upon information communicated to him by parties who had knowledge of the

transaction. Police officers, and individuals, making complaints for criminal offences, cannot always act from their own knowledge, and must rely to some extent, and sometimes entirely upon information derived from other parties. Such information would tend very much to rebut the presumption of a want of probable cause, and to justify the complaint made by the defendant. It was not absolutely essential that these witnesses should be produced before the magistrate, and sworn on obtaining the warrant, and it is no answer to the evidence offered, to say that the defendant had personal knowledge of the truth of the facts. Even if he had, he had still a right to act on the version of other witnesses present at the time. Nor was it the mere opinion of witnesses that was offered, but a statement of facts connected with the alleged affray, which might seriously affect the action of the defendant as a police officer. It must be assumed, I think, that the offers made were intended to establish that the defendant acted under a belief that these representations were correct and true.

It is said that the defendant was subsequently allowed to testify as to the statements of other persons about the affair. It is true that the defendant stated in his cross-examination that these men—what men are not stated—were talking about Connolly; that he was as much to blame as Hay. But it does not appear distinctly, as it does in the offer made, that they made complaint to him as an officer, or requested him to go back and arrest the plaintiff. Even if it did so appear, I think the defendant was entitled to prove these statements by other parties who were disinterested, and whose evidence would be likely to receive more weight in the minds of the jury than the evidence of the defendant alone, who was an interested party, and whose testimony was liable to criticism and to assault. As there was error in rejecting this evidence, the judgment must be reversed and a new trial granted, with costs to abide the event.

Judgment reversed.