Dykman, J.
J. — To enable a party to maintain an action for malicious prosecution he must aver and prove, among other things, that the prosecution alleged to have been malicious was terminated, and terminated in his favor. This is familiar law, and has been steadily adhered to by the courts, both in this country and in England, and has become so fundamental, that it is not necessary to cite authorities to support it.
The plaintiff recognizes this rule, and for the purpose of bringing himself within it, alleges in his complaint substantially that the prosecution which he complains of as malicious was ended and determined by the entry of a nolle, prosequi on the indictment of the district attorney of Kings county by permission of the court in which the indictment was at the time ; and the question to be determined is whether the entry of a nolle prosequi by the district-attorney by the permission of the court, is such an end of the prosecution as will sustain this action for malicious prosecution.
A nolle prosequi may be entered by the attorney- *198 general or the district-attorney. In law and in practice it is a declaration of the will or determination of the public prosecutor that he will not further prosecute the indictment. Since the Revised Statutes this cannot be done by a district-attorney without the leave of the court. When leave is given, it is only an order that the district-attorney have leave to enter a nolle prosequi, and then the district-attorney enters it or not as his sense of duty dictates, and if he does enter it, it has precisely the same effect it had before it was necessary to obtain the leave, and precisely the same effect as though it had been entered by the attorney-general without leave, and no more.
What then is the effect of this action of the district-attorney ? Does it terminate the prosecution? As before stated, it is but the declaration of the public prosecutor that for reasons which are satisfactory to himself he will not further prosecute the indictment.
Suppose thereafter a state of facts should be brought to his attention which would materially change the matter and render it proper in his opinion to proceed with the prosecution. Is there any reason why he could and should not apply to the court and obtain permission to proceed on the indictment, and try the defendant ? Obviously there is none.
The indictment remains in full force. It has not been passed upon judicially in any way. It has not been before the court at all. It simply has upon it an indorsement of the intention of the district attorney not to prosecute.
The court has not ordered this, nor passed upon the question whether it should be done or not. It has simply made an order giving the district-attorney leave to do it. That is aE the court has power to &o, and that is all it does, and the aEegations in the complaint in respect to the aEowance of the nolle prosequi *199 must be construed with reference to this power of the court, and of the district-attorney.
This proposition seems to rest securely and satisfactorily upon principle, but it is not without authority to sustain it. In the case of Goddard v. Smith, in the court of king’s bench in England, Chief Justice Holt said, that the entering of - a nolle prosequi was only putting the defendant sine die, and so far from discharging him from further prosecution, new process might be made out upon that very same indictment (6 Mod. 262). This same doctrine is contained in the elementary writers (1 Archbold's Criminal Practice and Pleadings, 336; Greenleaf Ev. § 452; 3 Phil. Ev. 568; Stark. Ev. 906; 1 Colby's Crim. Law, 270; Barb. Crim. Law, 359; Wharton's Am. Crim. Law, § 513).
On the argument it was claimed by the counsel for the plaintiff, that the case of Goddard v. Smith had been repudiated in the case of Regina v. Allen, 1 Best & Smith, 8, 50. In this case the attorney-general had entered a nolle prosequi, and an application was made by the prosecution for a rule calling upon the defendant to show cause why the prosecution might not proceed notwithstanding the not. pros. The rule was denied, and the court held that the attorney-general had power to enter a nolle prosequi on an indictment without calling upon the prosecution to show cause why that should not be done, and three of the judges put their decision on the ground that they would not interfere with the attorney-general.* Mr. Justice Cbompton" was the only judge who mentioned the case of Goddard v. Smith, and it cannot be said that this case is in conflict with that so far as its authority goes.
*200 The same doctrine is held by the supreme court of Massachusetts (Bacon v. Towne, 58 Mass. 217, 235; Parkey v. Farley, 64 Mass. 279; Brown v. Lakeman, 66 Mass. 482).
Thomasen v. De Mott (9 Abb. Pr. 242), is a case much like this. The complaint alleged that the assistant district-attorney wrote on the indictment as follows: “On the papers there seems to have been no perjury committed ; the cross examination should be taken with the complaint, and the case is frivolous. It should never be tried. ¡November 6th, 1858,”—signed by the assistant district-attorney.
The complaint was demurred to, and Bosworth, Ch. J., held the demurrer well taken.
In principle there is no difference between this indorsement on the indictment and the entry of a nolle prosequi, which in form is as follows: “The district-attorney saith that he will not prosecute further on behalf of the people against the defendant ” (Barb. Crim. Law, 359). Both indicate the intention and determination of the district-attorney not to proceed further on the indictment. There are many cases out of our own State which sustain the same doctrine (See Pratt v. Page, 18 Wis. 337; Ragsdale v. Boules, 16 Ala. 62; Gillespie v. Hudson, 11 Kans. 163; Smith v. Shackford, 1 Nott & M. 36; Heyward y. Cuthbert, 4 McCord, 354; Sinclair v. Eldred, 4 Taunt. 10; State v. Thornton, 13 Wend. 256; State v. Haskett, 3 Hill S. C. 95).
In the case of Clark v. Cleveland (6 Hill, 347), Judge Co wen indulged in some general remarks which are quoted by plaintiff’s counsel in his brief as favoraable to his view; and they are so, but they are very loose general statements, and the case itself was determined against them, and against the plaintiff on the very point that the original prosecution was not ended. The case itself, however, is very unsatisfactory, and *201 was disapproved in the case of Doyle v. Russell (30 Barb. 300). Most of the cases referred to by the counsel for the plaintiff, where the prosecution complained of as malicious has been held to be terminated so as to sustain the action for malicious prosecution, are cases where the prosecution has been ended either by the judgment of some judicial tribunal, or the defendant has been discharged after judicial investigation. Such is the case of the return of an indictment ignoramus, the quashing of an indictment, the discharge by a magistrate, and the discontinuance of a civil action by order of the court. The cases that fall in one or the other of these classes are quite numerous, and are all satisfactory. But they bear no analogy to a nolle proseguí, which is neither the judgment of any judicial tribunal, nor the result of any judicial investigation.
It was claimed on the argument that it had been explicitly decided that a nolle proseguí was sufficient to support an action for malicious prosecution in the following cases: Yocum v. Polly, 1 B. Monroe, 358; Chapman v. Wood, 6 Black, 504; Richter v. Koster, 45 Ind. 440; Driggs v. Burton, 44 Vt. 124; Rice v. Ponder, 7 Ired. 390; and Brown v. Randall, 36 Conn. 56.
In Yocum v. Polly, a judgment had been obtained in an action for malicious prosecution, and a motion was made for a new trial on the part of the defendant, which was granted on the ground that due effect had not been given to the agency which the attorney of the commonwealth might have had in the prosecution without the instigation of the defendant, and because there was no proof of want of probable cause for the prosecution.
It does not appear that the plaintiff ever had been indicted, but after others had been discharged by the justice, the public prosecutor directed a nolle proseguí as to the plaintiff.
*202 In the opinion of the court is the following paragraph: “Nor do we doubt that the entry of a nolle prosequi by the attorney for the commonwealth was such a termination of the prosecution as authorized the bringing of this action.”
It will be seen that this is plainly obiter, and that the case itself does not decide that principle, and can have no controlling effect in this action.
Chapman v. Wood is not an authority in favor of the plaintiff, but is rather against him. The action was for malicious prosecution, and it appeared that a nolle prosequi to the indictment had been entered, and a judgment thereupon rendered, that the defendant “go hence thereof acquit without day,” and it was held that the acquittal was sufficient to maintain the action. The opinion is to the effect that the entry of a nolle prosequi by the prosecuting officer without any judgment of the court discharging the defendant, is not a sufficient termination of the prosecution, and cites Goddard v. Smith -with approval.
In Richter v. Koster, the plaintiff was indicted, tried, found guilty, a new trial was granted, and then a nolle prosequi was entered, and the court in the opinion says: “The case having been restored to its former condition by granting a new trial, the entry of the nolle prosequi, and the judgment of the court, that the defendant be discharged from further answering to the indictment and go hence without day, were such a final determination of the prosecution that, so far as this point is concerned, the defendant in that case had the right to sue for malicious prosecution.
In Briggs v. Burton, the plaintiff was taken before a magistrate for examination, and the State’s attorney appeared for the prosecution, but no witnesses came, and the plaintiff was discharged, and the State’s attorney entered a nolle prosequi/ no indictment was ever found.
*203 Rice v. Ponder decides that in action for malicious prosecution it is sufficient, in order to prove the prosecution terminated, to show that the plaintiff was bound to appear at a term of a court to answer a criminal charge, that he did appear, and was not re-bound ; and that much more is it so when solicitor for the State makes an entry on the docket that he does not think the evidence sufficient to convict.
In Brown v. Randall, the complainants sent word to court where the plaintiff was in custody, that they should prosecute the complaint no further, and thereupon the plaintiff was discharged. The court held this a sufficient termination of the prosecution. There was no indictment and no nolle prosequi. In the opinion the court says: “ The conviction of the plaintiff is justly considered as conclusive evidence of probable cause. The authorities referred to (1 Swift, 491), decide that the determination of the prosecution by a nolle prosequi or abandonment was equally conclusive upon that question.”
The foregoing is a review of all the cases which it is claimed directly sustain the plaintiff’s position in this action, and it will be seen that none of them are in point in his favor, and some of them are against him.
The same review of the cases, referred to above, as sustaining the defendant’s position, would show that they are very much in point, and many of them, in their reasoning, in his favor; but as the conclusion arrived at is in favor of the defendant, it is not deemed necessary to make such review. Some of the elementary authorities are also very strong. Whabtok says: “A nolle prosequi is a voluntary withdrawal by the prosecuting authority of present proceedings on a particular bill at common law; it may be at any time retracted, and is not only no bar to a subsequent prosecution on another indictment, but may be so far can-celled as to permit a revival of proceedings on the orig *204 inal bill” (Wharton’s Am. Crim. Law, § 513, citin many authorities).
The fact stated in the complaint, that the prosecution was nolle pross’d at the request of the defendant and against the protest of the plaintiff, has no weight on the question whether the prosecution is terminated.
That argument might well have been addressed to the district-attorney before he entered the nolle prosequi, and if the propriety of his action was in question or under review, it would be entitled to consideration. But the district-attorney has entered the nolle prosequi for reasons that were satisfactory to him. The law has lodged that power with him, and there is no appeal from his action.
If, in consequence of the action of the district-attorney, the plaintiff cannot maintain this action, this court can give him no relief.
My conclusion is, that this action cannot be sustained.
So far from extending the cases in which this kind of action can be maintained, they should be strictly confined to prescribed rules, and should never be sustained if the plaintiff does not aver and prove that the prosecution complained of terminated in his favor after some judicial investigation.
The action is not favored, and there is no reason why it should be. People must be left reasonably safe . and free to institute criminal proceedings, and set the criminal law in motion. The law on the subject is settled very well in our State, and stands on a very satisfactory basis.
Demurrer sustained, with leave to the plaintiff to amend in twenty days, on payment of costs.
From the order and judgment entered on this decision, plaintiff appealed to the general term.
Roger A. Pryor, for plaintiff, appellant.
*205 First. If a criminal prosecution be capable of termination by a nolle prosequi, the complaint is sufficient; for it alleges the prosecution was wholly ended and determined. The reference to the not. pros, only indicates the manner of the termination, but does not qualify the fact of the termination.
I. The gist of the action for malicious prosecution is the want of probable cause (Johnstone v. Sutton, 1 T. R. 544), and the averment that the previous action is determined does not touch the merits, but is a mere technical prerequisite” (Clark v. Cleveland, 6 Hill, 347; Stanton v. Hart, 27 Mich. 539). Hence, the absence of such averment is cured by verdict (Skinner v. Gunton, 1 Wm. Saunders, 228; Gibson v. Waterhouse, 4 Greenl. 226); and the fact of the determination of the previous action, is not put in issue by a general denial (Watkins v. Lee, 5 Mees. & Wels. 270; Drummon v. Pigon, 2 Bingh. N. C. 114). Though the plaintiff were acquitted on the prosecution, want of probable cause must be substantively and expressly proved (Willan v. Taylor, 6 Bingh. 186; Murray v. Long, 1 Wend. 141; Broom’s Comm. 741).
II. Originally, upon a false analogy to the writ of conspiracy, a technical acquittal was indispensable to the support of this action (Holt, J., in Goddard v. Smith, 6 Mod. 262; 2 Selwyn’s N. P. 1062). Now, however, it is not essential that the prosecution so terminate as to discharge the offense and oppose a bar to a fresh proceeding. An end of the particular prosecution suffices (Clark v. Cleveland, 6 Hill, 347). The doctrine here propounded, has been recognized and ratified by the highest court, and is the settled law of this state (Fay v. O’Neill, 36 N. Y. 13; Palmer v. Avery, 41 Barb. 306; Thomason v. De Mott, 18 How. Pr. 529; Miller v. Milligan, 48 Barb. 37; Scott v. Simpson, 1 Sandf. 206, note; 4 Abb. N. Y. Digest, 278). True, Mr. Justice Dykmait harshly *206 criticises the opinion of Judge Cowett ; but the reputation of that eminent jurist will probably survive the dissent; especially since the doctrine of Clark v. Cleveland has been adopted and incorporated in the jurisprudence, not of New York only, but of other States in the Union (Stanton v. Hart, 27 Mich. 539; Long v. Rogers, 17 Ala. 546; Brown v. Randall, 36 Conn. 56). True it is also, that the decision in Clark v. Cleveland was adverse to the maintenance of the action; but, as there was no nol. pros, in the case, and the decision does not impugn the dictum, the pertinency of the learned justice’s observation is not altogether apparent. True it is, moreover, that the authority of Clark v. Cleveland was questioned in Doyle v. Russell, 30 Barb. 303; but the point there challenged was not the efficacy of a nol. pros, to end a prosecution, but the right of an officer to recapture a criminal after a voluntary escape; and in Gang v. Hall, 42 N. Y. 70, the court of appeals concurred with Judge Co west in even this opinion. Hence, in virtue of the doctrine in Clark v. Cleveland, return of an indictment ignoramus, suffices to support an action for malicious prosecution (Haupt v. Pohlmann, 16 Abb. Pr. 302; Rost v. Harris, 12 Id. 446; Morris v. Corson, 7 Cow. 281; McKown v. Hunter, 30 N. Y. 625; Cole v. Hank, 3 Monroe, 208; Morgan v. Hughes, 2 T. R. 232, per Buller, J. ; Weinberger v. Shelly, 6 Watts & S. 343; Payne v. Porter, Cro. Jac. 480; Stancliff v. Parmenter, 18 Ind. 321; Gilbert v. Emmons, 42 Ill. 143; Jones v. Given, Gilbert, 185, 220). So, if the indictment be quashed (Hays v. Blizzard, 30 Ind. 457). So, a dismissal of a complaint or discharge by a magistrate having no jurisdiction to try, but only to bind over, &c. (Ames v. Stearns, 37 How. Pr. 289; Foote v. Milbier, 1 Thomp. & C. 456; Goodman v. Stroheim, 4 Jones & S. 216; Secor v. Babcock, 2 Johns. 203; Taylor v. Briggs, 4 Metc. 421; Goodrich v. Warren, 21 Conn. 432; Smith v. Ege, 52 *207 Penn. 419; Van Voorhes v. Leonard, 1 Thomp. & C. 149; Connelly v. McDermott, 3 Lans. 63; Burlingame v. Burlingame, 8 Cow. 141; Farnam v. Feeley, 56 N. Y. 451; Weaver v. Townsend, 14 Wend. 192; Murray v. Long, 1 Id. 141; Carpenter v. Sheldon, 5 Sandf. 77; 4 N. Y. 580; Carl v. Ayers, 53 Id. 14; Stevens v. Lacour, 10 Barb. 62; Gould v. Shearman, 10 Abb. Pr. 441). So, a dismissal or discharge for non-appearance of the prosecutor (Fay v. O’Neill, supra; Van Latham v. Rowan, 17 Abb. Pr. 238; Lawyer v. Loomis, 3 Thomp. & C. 393; Garrison v. Pearce, 3 E. D. Smith, 255; Center v. Spring, 2 Clark (Iowa) 293; Purcell v. McNamara, 9 East, 361). So, a discharge by the magistrate with the acquiescence of the prosecutor (Burkett v. Lanata, 15 Louisiana, 337). So, judgment of nonsuit or non. pros, suffices for this action (Besson v. Southard, 10 N. Y. 236; Gordon v. Upham, 4 E. D. Smith, 9; Vorrish v. Richards, 3 Ad. & Ell. 433; Sinclair v. Eldred, 4 Taunt. 7; Roberts v. Bayles, 1 Sandf. 46; Pierce v. Street, 3 B. & Ad. 39). So of a voluntary discontinuance (Burhans v. Sandford, 19 Wend. 417; Clark v. Cleveland, 6 Hill, 347; Nicholson v. Coghill, 6 Dow. & Ry. 12; Watkins v. Lee, 5 Mees. & Wels. 270; Goslin v. Wilcock, 2 Wilson, 302). So, discontinuance by default to declare in time (Pierce v. Street, 3 B. & Adol. 397). So, abandonment by plaintiff of former suit (Brown v. Randall, 36 Conn. 56; Cardival v. Smith, 109 Mass. 158; 12 Am. Rep. 682; Arundel v. White, 14 East, 216). So, abandonment of the charge and discontinuance of the prosecution is equivalent to a discharge of the party from the accusation ” (4 Abb. N. Y. Digest, 278). So, a rule to discontinue on payment of costs (Bristow v. Haywood, 4 Campb. 214; Brook v. Carpenter, 3 Bingh. 297; Combe v. Capron, 1 M. & Rob. 398; Webb v. Hill, M. & M. 253). So, a discharge by U. S. commissioner, acting as a magistrate (Vanderbilt v. Mathis, 5 Duer, 305). *208 So, a dismissal, for want of jurisdiction in the court (Morris v. Scott, 21 Wend. 281). So, discharge of defendant by State solicitor, though not of record (Murray v. Lackay, 2 Murphy [N. C.] 368). So, discharge of a recognizance by State’s attorney is sufficient to support malicious prosecution (Schoonover v. Myers, 28 Ill. 309). So, an acquittal for variance (Wicks v. Fentham, 4 T. R. 247). So, an acquittal for a defect in the indictment (Chambers v. Robinson, 1 Strange, 691; and in this State, Dennis v. Ryan, 5 Lans. 350).
III. Here the particular prosecution is determined. 1. In a civil action a nolle prosequi “is an acknowledgment or agreement by the plaintiff entered on record, that he will no farther prosecute his suit” (1 Dunlap's Practice, 489 ; 1 Tidd, 681); and it has the effect of a nonsuit or discontinuance (1 Freeman on Judgments, § 318). “The king’s attorney quia sequitur pro domino rege may enter an ulterius non rult prosequi, which hath the effect of a non-suit” (Coke Litt. 139 b. [m.] ; Noke v. Ingham, 1 Wilson, 89; Cooper v. Tiffin, 3 T. R. 511; Exp. Nelson, 1 Cow. 419, 420; Hartness v. Thompson, 5 Johns. 160 ; Morton v. Croghan, 20 Id. 122; Bowden v. Horne, 7 Bingh. 722 ; Newington v. Levy, L. R. 6 C. P. 187, 193). In an action ex contractu against several, a not. pros, as to one is a discontinuance to all (Coke Litt. 232 a. 1; Hall v. Rochester, 3 Cow. 374; Biedman v. Vanderslice, 2 Rawle, 334; Morton v. Croghan, 20 Johns. 106 ; 1 Chitty Pl. 567; Tidd, 862 ; Graham's Practice, 607 et seq.). A not. pros, determines the action and discharges the defendant—in so much as to entitle him to costs, and to make him a competent witness, he being no longer a party to the record (Salmon v. Smith, 1 Wm. Saunders, 207 n. 2; Morton v. Croghan, 20 Johns. 106 ; 3 Bouvier's Inst. 438 ; 1 Tidd, 681). Indeed, anciently a not. pros, was equivalent to a retraxit, and was a bar to any other proceeding (Beecher’s case. *209 8 Rep. 59, 62 ; Turner v. Gallilee, Hardres, 153 ; Barrett v. Third Avenue, &c., 45 N. Y. 636). 2. In a criminal proceeding the effect of a nol. pros, is identical; i. e., it determines the particular prosecution. The attorney-general has the same right to enter a nolle prosequi on behalf of the crown, that a plaintiff has in a civil action (Blackburn, J., in Regina v. Allen, 1 Best & Smith, 581). “If the king, by his attorney-general, enter a nolle prosequi, the king cannot afterwards proceed in the same suit, but he may begin anew; and this by reason of the prejudice which might otherwise accrue to the subject” (Rex v. Pickering, Hardres, 82). In A. G. v. Bogg, Hardres, 126, held, that a nol. pros, to an information discharges it. [Hardres reports the decisions of Sir Matthew Hale under the protectorate, and his book is of great authority. ] “A nolle prosequi has the effect of putting an end to the prosecution altogether” (Archbold's Pr. of the Crown Office, 62). In Goddard v. Smith (6 Mod. 262), Habcourt, master of the office, having been directed by the court to search precedents, reported that: “There never has been any proceeding after a nolleprosequi.” In Regina v. Allen, supra, Cockburn, C. J., said: “No instance has been found, and therefore it may be presumed none can be found, in which, after a nolle prosequi has been entered, this court has taken upon itself to award fresh process, or has allowed any further proceeding to be taken upon the indictment.” And per Crompton, J., in the same case “A nolle prosequi puts an end to that prosecution.” ‘‘A nolle prosequi is a discharge as to the indictment, but is not an acquittal of the crime” (Lord Campbell, in note to Poynton v. Forster, 3 Camp. N. P. Rep. 61). In Rex v. Straton (1 Douglas, 239), it was assumed without question, that a nol. pros, determines the prosecution. State v. Haskett (3 Hill (S. C.) 95), holds, that a nol. pros, though not a discharge of the crime, is an end of the indictment (Acc. Long v. *210 Rogers, 17 Ala. 546 ; State v. McNeil, 3 Hawkes, 183). A nol. pros, ends the prosecution, so that one jointly indicted may be a witness (State v. Clump, 16 Mo. 385). A nol. pros, after the jury impanneled, is equivalent to an acquittal (U. S. v. Schoemaker, 2 McLean, 114). Entry of nol. pros, is an end of the prosecution and a discharge of the defendant (Brittan v. State, 7 Humph. Tenn. 159). “The entry on the record is an act by which the prosecution declares it will proceed no farther with the indictment, or with that part of it specified in the order. Its effect is to put the prisoner without day to such part; and if to the whole, entitles him to discharge from arrest, unless he be held for re-indictment,” &c. (People v. Porter, 4 Parker C. C. 526, 1 Bish. on Crim. Law, § 1014; Smith v. Smith, 49 N. H. 155; 6 Am. Rep. 480 ; Regina v. Allen, 1 Best & Sm. 850). Regina v. Redpath, 10 Mod. 152, is not contra, but merely decides (what we concede) that a nol. pros, does not discharge the crime, or bar another prosecution. This report “seems but a loose note” (Blackbukrn, J., in Reg. v. Allen, supra, 853). In Com. v. Wheeler, 2 Mass. 173, per Sedgwick, J., the doctrine that a nolle prosequi was not á bar to the indictment, has been overruled. 3. The notion that a nolle prosequi operates only to stay proceedings originated in a doubt of Lord Holt (Goddard v. Smith, 1 Salk. 21; 6 Mod. 261). It was never more than an idle fancy without precedent in practice; and it is now repudiated by the court in which it had its birth (Goddard v. Smith, supra; Reg. v. Allen, 1 B. & S. 850). In this country it has had some speculative recognition, but in no instance has it been acted on, and now the clear weight of authority is against its abstract validity (cases supra). 4. But whatever the law in England, or elsewhere, in this State a nolle prosequi is necesarily an end of the prosecution. In England a nolle prosequi is entered by the attorney-general ex *211 mero motu, and is not an order or adjudication of the court (Reg. v. Allen, 1 B. & S. 851). So in Massachusetts and other States, where a nolle prosequi is held not to determine the prosecution (Com. v. Tuck, 20 Pick. 173; State v. Smith, 49 N. H. 185; 6 Am. Rep. 480). Subject to the exclusive control of the public prosecutor, the nolle prosequi may consistently be held revocable at his pleasure. But the case is otherwise in New York, where by statute the entry of a nolle prosequi is removed beyond the power of the State’s attorney, and is made an adjudication of court and a matter of record (2 Rev. Stat. 728, § 54). -Neither the district-attorney nor the court alone can nolle an indictment (People v. McLeod, 25 Wend. 572; People v. Harris, Edmond's Rep. 453 ; Thomason v. De Mott, 18 How. Pr. 529). Being an adjudication of record, the nolle prosequi cannot be canceled or the indictment revived (Brush v. Bobbins, 3 McLean, 486; Com. v. Shanks, 10 B, Mon.; Vandyke v. The State, 22 Ala. 57; Morrison v. Dossman, 3 Cal. 255). Indeed the statute imports ex vi termini, that a nolle prosequi is an end of the indictment. “It shall not be lawful for any district-attorney to order a nolle prosequi upon an. indictment, or in any other way to discontinue or abandon the same," &c. (2 Rev. Stat. 728, § 54). Observe an essential distinction: if the prosecution begin with a magistrate, who holds or bails the party the party for indictment, then, possibly, though the indictment be quashed or nolled, the prosecution does nob terminate. But the complaint shows the first act and foundation of the prosecution to be the indictment: and that failing, the prosecution necessarily ends. If the party is to be pursued farther, there must be a fresh complaint before the grand jury, and a new indictment.
IV. A nolle prosequi is such an end of the prosecution as wall sustain this action. Entry of a nolle pro *212 sequi being an end of the prosecution, the defendant’s discharge follows as a legal consequence (Britton v. State, 7 Humph. 159 ; People v. Porter, 4 Parker C. C. 526 ; Driggs v. Burton, 44 Vt. 124; 4 Abb. N. Y. Digest, 278; Mills v. McCoy, 4 Cow. 410 ; Murray v. Lackey, 2 Murphy, 368); and to allege it would be merely to plead a conclusion of law. If the nolle be not an end of the prosecution, then an allegation of defendant’s discharge would be nugatory (Morgan v. Hughes, 2 T. R. 225). 1. In reviewing the authorities it is essential in limine to distinguish between cases bearing on the point in controversy, and cases touching the question whether a particular termination be prima facie proof of want of probable cause; for universally a nolle prosequi alone, though an end of the prosecution, will not avail to establish malice or want of probable cause (Gorton v. De Angelis, 6 Wend. 418; Burlingame v. Burlingame, 8 Cow. 141; Nicholson v. Coghill, 6 Dow. & Ry. 12 ; Sinclair v. Eldred, 4 Taunt. 7). 2. The precise point in controversy has been determined both ways. 1st. Authorities contra. In England it has never been adjudicated that a nolle prosequi is not a sufficient termination to sustain an action for malicious prosecution. The question could not have arisen before Charles II., for the practice of entering a nolle by the attorney-general, was not known till “the latter end of that reign ” (Goddard v. Smith, 6 Mod. 262; Reg. v. Allen, 1 B. & S. 583). The point was first mooted in Goddard v. Smith (1 Salkeld, 21; 6 Mod. 261), and upon that case stands every citation against us, whether dictum of judge or doctrine of text-writer. Bat it is no authority for the proposition that a nolle prosequi is not such an end of the prosecution as will sustain this action (Hall, J., in White v. Fort, 3 Hawks, 267; Poynton v. Forster, 3 Campbell, 61, note). In the report by Salkeld, the only thing decided was, that the proof of a nolle prosequi *213 did not support the allegation “ legitimo modo acquietatus /’ ’ “for the nolle prosequi is a discharge of the indictment, but is no acquittal of the crime. But the chief justice doubted of the latter matter, and was of opinion that the crown, notwithstanding the nol. pros, might award new process on the same indictment.” In “Modern” vol. 6, p. 261, the case is more copious, but still falls short of an adjudication. Besides, Lord Holt stigmatized this book as “ shimble shamble stuff, and said it would make posterity think him a fool. More justice is done him by Salkeld” (3 Campbell’s Chief Justices, 112, ed. 1851). Speaking of the report in Modern, Wilmot, J., declared that “nine cases of ten” in the collection were mistaken (Ram on Judgment, 108). In Massachusetts, we concede, the law is against us ; but it originated in a misapprehension, and. if an open question, would be determined otherwise (Bacon v. Towne, 4 Cush. 235; Parker v. Farley, 10 Id. 281). Moreover, it is assumed that the prosecution must be so ended as to bar a new indictment.(Bacon v. Towne); whereas in New York it suffices that the particular prosecution be determined (Clark v. Cleveland, supra). The text-writers propound the rule in favor of defendant, but their dicta are sustained neither by reason nor authority. For proof, two authors shall suffice: Phillipps and Greenleaf. The former, in his Treatise on Evidence, vol. 3, p. 568, says : “An entry of a nolle prosequi by the attorney-general is not such a termination of the prosecution as will enable the plaintiff to maintain this action; because new process may issue on the same indictment” (citing for the proposition Goddard v. Smith only). Now, the notion that new process may issue on the indictment is exploded (Reg. v. Allen, supra); and the rule falls with its support. Besides, the allegation of our complaint is that the nolle prosequi was adjudged and entered by the court. In 2 Greenleaf on Evidence, § 452, it is *214 said not to be “enough that the indictment was ended by the entry of a nolle prosequi.” Besides Massachusetts cases, the only citations for the proposition are : Goddard v. Smith, already discussed and discredited ; Fisher v. Bristow, 1 Douglas, 215, which simply decides that the prosecution must be ended; Morgan v. Hughes, 2 T. R. 225, which holds only, that an allegation of acquittal is not satisfied by proof of a discharge ; and Smith v. Shackelford, 1 Nott & McCord, 36, which, involving also an objection of variance, asserts nothing more than that “a mere private memorandum” by the district-attorney, does not put an end to the prosecution (but in the same state a nol. pros, adjudged by the court and entered of record, would clearly suffice. 1 Nott & Mc. 36). 2nd. But, conceding everything to adverse authorities, it is still apparent, they cannot be decisive of this controversy; because a nolle prosequi by the State’s attorney, and a nolle prosequi adjudged by the court and matter of record, are too dissimilar in substance and effect, to authorize an inference from the one to the other. Otherwise, as to authorities in support of plaintiff’s contention; for if a nolle prosequi by the State’s attorney of itself avails to determine the prosecution, a multo fortiori will a judgment of nolle awarded by the court, and recorded upon its minutes (Driggs v. Burton, 44 Vt. 124 ; Hays v. Blizzard, 30 Ind. 457; Arundel v. White, 14 East, 219). 3rd. That a nolle prosequi is sufficient to support an action for malicious prosecution, was directly and explicitly decided in Yocum v. Polly, 1 B. Mon. 358; Stanton v. Hart, 27 Mich. 539; Wood v. Chapman, 6 Blackf. 604; Richter v. Koster, 45 Ind. 440; Driggs v. Burton, 44 Vt. 124; Rice v. Ponder, 7 Ired. 390. See Brown v. Randall, 36 Conn. 56; 4 Am. Rep. 35; White v. Fort, 3 Hawks, 267). In New York the specific point has never been adjudicated, and indeed was never presented for adjudication *215 (see McCormick v. Sisson, 7 Cow. 715; Morris v. Corson, 7 Id. 282; Thomason v. De Mott, 18 How. Pr.. 529; Bacon v. Townsend, 6 Barb. 426). Perhaps it may not be impertinent to add that in his Book of Forms (Vol. I. p. 486), Mr. Austin Abbott, of counsel for respondent, propounds a formula of complaint in malicious prosecution, “for obtaining indictment on which a nolle prosequi was afterwards entered,” and appends in a note that the supreme court, at general term, held a nolle prosequi to be a sufficient determination to sustain the action.
Second. On the special and peculiar facts of the case the action will lie though the prosecution be not at an end.—I. Hitherto the argument has assumed, that, until determined, a legal proceeding cannot be made a ground of action. But the rule is not inflexible ; and, being a mere “ technical prerequisite” (supra, point I.), like formal notice or demand in certain other actions, the condition is waived when inconsistent with the claims of substantial justice. 1. The authorities are clear to the point. In Bebinger v. Sweet (6 Hun, 478), the judges of the third department unanimously ruled that “in an action for malicious prosecution, it is not necessary to allege or prove that the prosecution has terminated.”* In Bump v. Betts (19 Wend. 421), defendant had judgment in the original suit; but it was held that in an action for malicious prosecution, where the former suit was a proceeding by attachment, it is not necessary that the plaintiff should prove the determination of the former suit in his favor. Whitfield v. Hamilton (Stuart's Canada Report, 40), was an action for the malicious arrest of goods ; demurrer for that the former suit not ended, but held not necessary, and sufficient if the attachment was malicious and without probable cause. In Grainger v. Hill (4 Bingh. *216 N. C. 221), the objection of the pendency of the former suit was overruled: Tindall, C. J., propounding the principle of the cases thus: “If the course pursued by the defendant is such that there is no precedent of a similar transaction, the plaintiff’s remedy is by an action on the case, applicable to such new and special circumstances.” Churchill v. Siggers (3 Ell. & Bl. 937), was an action for subjecting plaintiff to a ca. sa. in an excessive sum; demurrer and judgment for plaintiff,' on the ground, as stated by Lord Campbell, C. J., that “to put in force the process of the law maliciously and without reasonable or probable cause, is wrongful; and if thereby another is prejudiced in property or person, there is that conjunction of injury and loss, which is the foundation of an action on the case. It would not be creditable to our jurisprudence ’ ’ if it afforded no redress for such a wrong. In Stuart v. Gromette (7 C. B. N. S. 191), the decision was that in an action for maliciously and without reasonable or probable cause, going before a magistrate and procuring the plaintiff to be held to bail, it was not necessary to aver that the proceeding before the magistrate was determined in favor of the plaintiff. In Heywood v. Collinge (9 Ad. & Ell. 268), the case was this : defendant having sued plaintiff and procured his arrest, and the arrest having been vacated, brought another action pending the first, for the same cause, and took and detained plaintiff on an order in the second suit; held, in an action for the second arrest, that it was well brought, though the second suit were not yet determined. And per Coleridge, J., “if an action is not sustained under ’ such circumstances, we must be prepared to hold that the process of the court may be abused for purposes however wanton and malicious.” And see Hull v. Vreeland, 42 Bard. 543. 2. These adjudications exemplify the immemorial and inestimable maxim of the law, ubi jus ibi remedium—there is *217 no wrong without a remedy (The Statute of Westminster 2, 13 Edw. 1, c. 24 ; Winsmore v. Greenbank, Willes, 577, Willes, C. J.; Chapman v. Pickersgill, 2 Wilson, 145; Ashby v. White, Ld. Raymond, 938; Pasley v. Freeman, 3 T. R. 63 ; Selwin's N. P. 1063 ; Rindge v. Baker, 57 N. Y. 225; Yates v. Joyce, 11 Johns. 154).
II. The complaint, of which all the allegations are admitted by the demurrer (Cutler v. Wright, 22 N. Y. 472 ; People v. Ingersoll, 58 Id. 40 ; Barrow v. Richard, 8 Paige Ch. 358, 360), exhibits a case of unique atrocity and oppression.
Thomas G. Shearman (Shearman & Sterling, attorneys), for the defendant and appellant.—First, It has been settled by innumerable adjudications, only a few of which it can be necessary to cite, that an action for malicious prosecution cannot be sustained unless the-original prosecution was finally determined in favor of the plaintiff, before the commencement of the action.
I. This rule is enforced with the utmost stringency in actions founded upon criminal prosecutions (Hall v. Fisher, 20 Barb. 441; Palmer v. Avery, 41 Id. 290; Clark v. Cleveland, 6 Hill, 344; Gordon v. De Angelis, 6 Wend. 418 ; McCormick v. Sisson, 7 Cow. 715 ; Bacon v. Townsend, 6 Barb. 426 ; Kirkpatrick v. Kirkpatrick, 39 Penn. St. 288; Gaylord v. Ford, 22 Weekly Reporter, 47; Fisher v. Bristow, 1 Douglass, 215; Waterer v. Freeman, Hobart, 267; Parton v. Hill, 12 Weekly Rep. 753 ; Pratt v. Page, 18 Wis. 337; Ragsdale v. Bowles, 16 Ala. 62 ; Smith v. Shackleford, 1 Nott & McC. 36; Morgan v. Hughes, 2 T. R. 225).
II. Even after judgment in the original prosecution, an appeal therefrom prevents an action for malicious prosecution (Palmer v. Avery, 41 Barb. 390; Howell v. *218 Edwards, 8 Ired. [N. C], Law, 516; Chelf v. Penn, 2 Mete. [Ky.] 463).
III. A distinction is made between civil and criminal cases, which does not affect the general principle, but arises from the numerous modes of termination peculiar to civil proceedings. Even this distinction has been reduced rather than extended by the later cases. 1. An action for the abuse of process in a civil suit, by using it as a means of effecting an end not within the legitimate scope of the process, is not an action for malicious prosecution, and, plaintiff in such case need not prove that the original suit "was at an end (Grainger v. Hill, 4 Bing. N. C. 212; 3 Scott, 516 ; Mayer v. Walter, 64 Penn. St. 283). 2. But if it is not alleged that such process was abused for the purpose of effecting something not within the scope of the suit, the original suit must be first terminated (Parton v. Hill, 12 Weekly Rep. 753; 10 Law Times, N. S. 414; Watkins v. Lee, 5 M. & W. 270). 3. Or the abused process must have been vacated or be void, ab initio (Searll v. McCracken, 16 How. Pr. 262).
Second. The complaint must show how the original prosecution terminated, and it must state that fact in such a manner as to raise some presumption that the action was without foundation. This can only be done by alleging an acquittal or something which is in law equivalent thereto.
I. A bare allegation of its having been terminated is not sufficient (Wilkinson v. Howel, 1 M. & M. 495 ; Thomas v. McGraffenreid, 2 Nott & M. [S. C.] 143; Cole v. Hanks, 3 T. B. Monroe, 208 ; Teague v. Wilkes, 3 McCord, 461; Law v. Franks, Cheves, 9).
II. The termination must be such as to furnish prima facie evidence that the action was without foundation (Wilkinson v. Howel, 1 Moo. & M. 485 ; Webb v. Hill, 3 Car. & P. 485).
III. Therefore it is insufficient to allege plaintiff *219 was discharged. He must have been acquitted either by a jury or a magistrate (Morgan v. Hughes, 2 T. R. 225; McCormick v. Sisson, 7 Cow. 715 ; Kilpatrick v. Kilpatrick, 39 Penn. St. 288; Bacon v. Townsend, 6 Barb. 426; Law v. Franks, Cheves [S. C.] 9; Steel v. Williams, 18 Ind. 161).
IV. That is to say, “acquitted or otherwise discharged on the ground of his innocence” (Harris v. Essall, 3 N. J. L. [2 Pen.] 411 [843]).
Third. Any statements in general language, that the original prosecution was ended or determined, are always construed in the light of the mode of termination set forth in the complaint. If the facts given as a description of the mode of termination are not sufficient to show a termination in fact, the courts disregard the other general language as mere conclusions of law, and on demurrer the complaint will be held insufficient, while, upon the trial, the evidence will be confined to a determination in the manner specifically alleged (Brown v. Lakeman, 66 Mass. [12 Cush.] 482 ; Law v. Franks, Cheves [S C.] 9; Combe v. Capron, 1 M. & Rob. 398).
Fourth. A nolle prosequi entered before the trial of an indictment, is not a final determination of anything. It is a mere declaration that the prosecuting officer does not intend to proceed, which he can revoke ; and after revocation the court may try the same indictment.
I. It is not a judicial determination, but the mere act of the prosecuting attorney. When entered by the attorney-general, the court has no power to interfere (Regina v. Allen, 1 Best & S. 850 ; State v. Thornton, 13 Ired. [N. C.] Law, 257; Rex v. Benson, 1 Sid. 423; 1 Vent. 33 ; People v. McLeod, 25 Wend. 482; State v. Smith, 49 N. H. 155).
II. The complainant cannot enter a not. pros., nor can it be sustained if entered by the clerk of the crown at his request. It is the act of the government, never *220 permitted by the court, except when done by the counsel for the government (Regina v. Dunn, 1 C. & K. 730; Rex v. Cranmer, 1 Ld. Raym. 721; S. C., 12 Mod. 647; Commonwealth v. Andrews, 2 Mass. 414).
III. The court never had power to compel the attorney-general to enter a nol. pros. An application was .once made in court by a fanatic, who declared that the Lord had directed him to require the court to enter a nolle prosequi, to which the chief-justice answered, “ Thou art a lying knave; for the Lord knows very well that the attorney-general only hath power to enter a nolle prosequi, and he would never have sent thee to court on such an errand.” Nor have the Revised Statutes of this State, which give to the courts the power to prevent a nol. pros, from being entered by a district-attorney, given them any power to order it affirmatively. They have a simple veto power over district-attorneys in this respect; and over the attorney-general they have no power at all (People v. McLeod, 25 Wend. 482, 572).
IV. Where the attorney-general enters a nol. pros. there is no order or judgment (Sir Colman O’Loghlen, arguendo, in Regina v. Mitchell [3 Cox C. C. 93], with the evident concurrence of the court and bar). The practice in this State, which has arisen since the Revised Statutes, of entering an order permitting a nolle prosequi by a district-attorney does not make the nolle prosequi itself, in any sense, the judgment or order of the court. It remains just as it was before the Revised Statutes—a mere expression of the intention of the prosecuting officer (See Colby Crim. Law, p. 268, § 33 ; People v. McLeod, 25 Wend. 482).
V. The form given in all the books, shows this: “The said C. F. R., attorney-general, will not further prosecute the said A. B. on behalf of our said lady the Queen on said indictment. Therefore, let all further proceedings be altogether stayed here in court against *221 Mm, the said A. B., upon the indictment aforesaid” (Archbold's Grim. Plead. 107). The form in this State is, “ The attorney-general of the State of New York saith that he will not prosecute further on behalf of the people against the defendant” (Barb. Crim. Law, 359).
VI. It does not absolutely entitle defendant to discharge from custody. That can only be effected by order of court, granted or not, according to circumstances (Regina v. Ridpath, 10 Mod. 152; Dunham v. State, 9 Geo. 306 ; State v. Lopez, 19 Mo. 254; People v. Porter, 4 Parke. Cr. 524; State v. Blackwell, 9 Ala. N. S. 79 ; State v. Haskett, 3 Hill [S. C.] 95).
VII. And it cannot operate as a retraxit or discharge of the offense, even if accompanied by an agreement of the prosecuting officer that it shall so operate. Such an agreement is ultra vires (State v. Lopez, 19 Mo. 254).
VIII. And further proceedings, even by new indictment, taken after a nol. pros, of a first indictment, are not a new prosecution, but a continuance of the former prosecution, both within the statute of limitations, and under the special statutes securing prompt indictment and trial to every one accused of crime (State v. Howard, 15 Rich. [S. C.] Law, 274 ; Commonwealth v. Adcock, 8 Gratt. 661).
IX. In State v. Haskett (3 Hill [S. C.) 95), the court said: “It seems to have been thought by the presiding judge that the nolle pros, was an end of the case, as a nonsuit would be in a civil action. This is a mistalee. ... It neither entitles the party to a discharge from custody, nor to have an exoneration entered on his recognizance.”
X. It is not only no bar, but is at any time revocable by the attorney-general, and a new warrant of arrest may be issued upon the original indictment, and a trial had thereon (Colby Crim. Law, 268, § *222 33 ; State v. Thornton, 13 Ired. [N. C.] Law, 256 ; State v. Thompson, 3 Hawks [N. C.] Law, 613; State v. Nutting, 39 Maine, 359; 1 Bishop’s Crim. Pro., && 1159, 1160; 1 William Saunders, 207 a; 1 Wharton Crim. Law, § 513). 1. As this proposition has been questioned in one or two treatises, and counsel for plaintiff declare it “exploded,” we will consider all the cases referred to- in opposition to it. a. Regina y. Allen (1 Best & S. 850), is only an authority for the proposition that the attorney-general has absolute power to enter a nolle prosequi, notwithstanding the court might disapprove of his doing so. The question whether new process could be issued on the indictment or not, was not before them. b. Regina v. Mitchell (3 Cox C. C. 93), has no bearing upon the question. The point at issue was whether a new indictment might be found upon the same facts after the former had been nol. prossed. The court held that it might be, but put its decision distinctly upon the ground that any number of indictments might be found upon the same felony, even though none of them were nol. prossed. So held also, in Adcock’s case (8 Gratt. 661, 682 ; 1 Chitty Cr. Law, 446; Foster Cr. Law, 104-106). 2. The decisions in this country are uniform and explicit, to to the effect that new process can issue upon the same indictment after the entry of a nol. pros. (State v. Thornton, 13 Ired. [N. C.] Law, 257; State v. Thompson, 3 Hawks [N. C.] Law, 613; State v. Nutting, 39 Me. 359).
XI. The cases referred to by plaintiff’s counsel as authorities to the contrary, do not sustain his doctrines.
Fifth. It has long been settled by the highest authority that malicious prosecution cannot be sustained where the original prosecution was not terminated except by nolle prosequi.
I. This was first decided by the court of king’s bench, the eminent Chief Justice Holt delivering its *223 opinion (Goddard v. Smith, 6 Mod. 262; S. C., less fully reported, but showing the actual judgment entered, 1 Salk. 21; S. C. stated again, saying that the court held that if there had been a plea of not guilty, and this had been confessed by the attorney-general, it would suffice. This illustrates with precision the true distinction. 11 Mod. 56).
II. In Massachusetts a judgment for malicious prosecution being reversed, and new trial ordered upon other grounds, Shaw, C. J., with the concurrence of the court, took occasion to say, for the guidance on the new trial, that the action could not be sustained upon evidence of a nol. pros., that defendant must be fully acquitted (Bacon v. Towne, 58 Mass. [4 Cush.] 217, 235).
III. The ruling being obiter, a subsequent action was sought to be maintained upon evidence of a nol. pros., and it was urged that the dictum should not be followed. The court, Shaw, C. J., reviewing the whole question, then unanimously held that it was well settled (Parker v. Farley, 64 Mass. [10 Cush.] 279).
IY. The question next came before the same court upon demurrer, and an attempt was made to help out the cause of action by the same language that is used in the present case; namely, an allegation that the prosecution was “ terminated” by the entry of a nolle prosequi. To this the defendant demurred generally, and the court unanimously sustained the demurrer (Brown v. Lakeman, 66 Mass. [12 Cush.] 482).
Y. The same rule is stated to be the law by the text writers of the highest authority (2 Greenl. Ev. § 452; 3 Phil. Ev. 568 [marg.] ; 2 Stark. Ev. 906).
YI. And recognized in other cases where the subject has been incidentally considered (Shock v. McChesney, 4 Yeates [Pa.] 507; State v. Haskett, Riley [S. C.] 97).
YII. And even in a private criminal prosecution, by *224 the old remedy of “appeal of murder,” &c., a nonsuit was not such an acquittal that the defendant could recover damages against the abettors, unless, after the nonsuit, he were arraigned at the king’s suit upon the appeal, and. acquitted (3 Bac. Abr. Nonsuit, G).
YIII. The cases cited for plaintiff on this point do not support his main proposition, and seem to have been quoted in his brief without a correct apprehension of the points actually decided in them. He says : “That a nolle prosequi is sufficient to support an action for malicious prosecution was directly and explicitly decided in Yocum v. Polly, 1 B. Mon. 358; Wood v. Chapman, 6 Blackf. 504; Richter v. Koster, 45 Ind. 440; Driggs v. Burton, 44 Vt. 124; Rice v. Ponder, 7 Ired. 390; Brown v. Randall, 36 Conn. 56 ; 4 Am. Hep. 35.” a. Yocum v. Polly contained a mere dictum on this question (the decision being for defendant), and even that dictum goes no further than to hold that a nol. pros., entered after the jury is impanneled and evidence has been given, may be sufficient. b. Chapman v. Woods decided only that a nol. pros., followed by a judgment of express acquittal and discharge, would sustain the action, and concedes distinctly that without such judgment of discharge the nol. pros, is insufficient, c. Richter v. Koster, without any discussion of principle, simply follows the ruling in Chapman v. Woods, d. Driggs v. Burton simply held that where a magistrate a having no power to try, but only to commit the accused for trial, discharged him upon the refusal of the State’s attorney to proceed, the prosecution was at an end. The court are careful to recognize the distinction between that case and the case of an ordinary nol. pros, under an indictment, and intimate their approval of the decisions holding that in the latter case no action will lie. e. Rice v. Ponder has not the slightest reference to a nol. pros, f. In Brown v. Randall, there was no indictment, and *225 there was and could be, no nolle prosequi. 2. Smith v. Shackelford (1 Noil & McCord, 36) contains a very distinct expression of opinion against plaintiff’s view.
Sixth.—The cases holding that a nolle prosequi is not a sufficient basis for an action for malicious prosecution are strongly supported by other cases, distinctly holding that a mere abandonment of a prosecution is not sufficient cause (Pratt v. Page, 18 Wis. 337 ; Rags-dale v. Bowles, 16 Ala. 62; Gillespie v. Hudson, 11 Hans. 163 ; Thomason v. Demotte, 9 Abb. Pr. 242; S. C., 18 How. Pr. 529 ; Smith v. Shackleford, 1 Nott & M. [S. C.] 36 ; Heyward v. Cuthbert, 4 McCord, 354). It was said in Sinclair v. Eldred (4 Taunt. 10), that there never yet- had been a case where the mere not proceeding was held sufficient.
Seventh.—Our doctrine is inferentially supported by a large class of cases in which the courts have been required to consider whether the action could be maintained without the verdict of a petit jury. 1. Thus it is held that where the original prosecution was submitted to a grand jury which ignored the bill and refused to find an indictment against the now plaintiff (whereupon he was discharged), this is a sufficient acquittal, being a complete and judicial termination of the whole prosecution (Stewart v. Thompson, 51 Pa. St. 158; Weinberger v. Shelly, 6 Watts & S. [Pa.] 336 ; Gilbert v. Emmons, 42 Ill. 143).
II. But in order to sustain an action upon the theory that the prosecution was terminated by the action of the grand jury, the plaintiff is bound to show affirmatively that the grand jury acted, that it decided the case in his favor, either by affirmative or negative action that is unmistakable, and that he was discharged from arrest, by order of the court (Walker v. Martin, 43 Ill. 508; Bacon v. Waters, 2 Allen, 400; Thomas v. Mc-Graffenreid, 2 Nott & M. [S. C.] 143. See Driscoll v. McBurney, 2 Nott & M. [S. C.] 54).
*226 III. Where a complaint is made to a magistrate having no power to try the cause, but only power to commit or discharge the accused, the dismissal of the complaint and discharge of the accused by such magistrate is a complete termination of that prosecution, and therefore an action can be sustained thereon (Fay v. O’Neill, 36 N. Y. 11; Secor v. Babcock, 2 Johns. 203 ; Sayles v. Briggs, 4 Metc.[Mass.]421; Burkett v. Lanata, 15 La. Ann. 337; Strauss v. Young, 36 Md. 246).
IV. We have already pointed out that this ruling has been misconstrued, in one or two-instances, into an intimation or decision that the action might be maintained upon a nolle prosequi. But the distinction is entirely clear, and it is recognized by the cases.
V. Where the indictment has been quashed by judgment of the court, and the plaintiff discharged therefrom by its order, there is a complete termination of the prosecution (Hays v. Blizzard, 30 Ind. 457).
VI. It will be seen that in all these cases there was an actual decision by a judge or jury having complete and exclusive control of the prosecution, by which the transaction was completely terminated, so that nothing more could be done under it. None of these cases afford any ground for assuming that the mere action or inaction of the prosecutor or prosecuting officer, unaccompanied by the judgment of a court, or the verdict of a jury, could afford any ground for an action for malicious prosecution.
Eighth. The averment in the complaint that the nol. pros, was entered at the request of the defendant, and in opposition to the will of the plaintiff, is entirely immaterial, and cannot affect the question now before the court.
I. If the nol. pros., when entered, is an absolute termination of the prosecution, the plaintiff would have a right to maintain his action, even though it had been entered against the will of the defendant.
*227 EC. If the nol. pros, does not in its own nature terminate the action, then the fact that defendant requested it to be entered cannot give it any additional force, and cannot make it a termination of the action, when, without that request, it would have no such effect.
III. Thus it is obvious that whether the defendant requested or opposed the entry of a nol. pros., its effect upon the maintenance of this action must be exactly the same.
Ninth. The provision of 2 R. S. 728, § 54, giving to district-attorneys power to enter a nol. pros, with the consent of the court, does not in the least affect the question here to be considered, nor change the effect of a nol. pros. when entered. The court has nothing to do with a nol. pros, except to grant a mere permission to the district-attorney to enter if he sees fit to do so. The nol. pros., when entered, is a mere act of the district-attorney, and in no sense an adjudication or order of the court, which has no power to compel bim to enter it against his will (People v. McLeod, 22 Wend. 482, 572).
Tenth. On general principles and apart from authority, the same conclusion must be reached. Actions for malicious prosecution are looked upon with disfavor (per Holt, C. J., Savile v. Roberts, Carthew, 416; Pantoune v. Marshall, Say. 162), for as Lord Camdeu said, “Courts will be cautious how they discourage men from suing” (Joslyn v. Wilcock, 2 Wilson, 202); an expression which was cited with approval by the supreme court of Massachusetts (Cardival v. Smith, 109 Mass. 158). The courts extend protection to suitors in private actions against unnecessary harassment by actions for malicious prosecution or false imprisonment, and there is much stronger reason for doing so where prosecutions are dropped for the public benefit, and in the name and under the control of the State.
I. The old maxim of the common law was that no *228 man should be punished for suing out the king’s writ, be it right or wrong (Ward v. Evans, 1 Com. 190, citing F. N. B. 429 b; Co. Lit. a, c). And while this rule is modified, the courts still find it necessary to discourage actions of malicious prosecution, be'cause few persons will be found willing to perform the high public duty of prosecuting an offender, if they are subject to liability at the discretion of the prosecuting officer by whose act, at any time, the prosecution may be abandoned (Hurd v. Shaw, 20 Ill. 354).
II. The protection of the citizen against wrongful criminal prosecutions consists: 1. In the requirement that the grand jury find an indictment against him ; 2. In his right to quash it if illegal; 3. In his right, when once before a jury, to insist on a verdict; and, 4. In the fact that in the intermediate period between the finding and impanneling a jury the discretionary power of district-attorney to abandon or stay the proceedings by nol. pros., cannot be exercised without leave of court. 1. Even after arraignment before the jury, the district-attorney may abandon the prosecution against defendant’s objection, and submit to a verdict for defendant ; but he cannot nol. pros., and the reason is, that a defendant then has a right to have the prosecution determined (Mount v. State, 14 Ohio, 295; Newsom v. State, 2 Kelly [Geo.] 60). 2. A nol. pros., entered after the jury is impanneled, and evidence given, is put upon a very different footing from a nol. pros. entered at an earlier stage. It is regarded as equivalent to an acquittal, and is a bar to a new indictment for the same offense (1 Bish. Cr. Law, § 1016; U. S. v. Shoemaker, 2 McLean, 114). 3. And it is the duty of the court, on an application for leave to nol. pros., to see that the rights of the defendant are protected. 4. To sustain the action upon a nol. pros. would be to quit every complainant to the peril of an action for malicious prosecution, unless he succeeds *229 not only in satisfying the legal judgment of the grand jury (and also of the court and petit jury if the cause comes to trial), but also the discretion of the prosecuting officer, a discretion which the court will not overrule at the instance of the complainant, and which can not be reviewed (Regina v. Allen, 1 Best & S. 850; Rex v. Benson, 1 Sid. 423; State v. Smith, 49 N. H. 155; People v. McLeod, 25 Wend. 482).
III. It is the uniform practice when arrest in a civil case has been obtained, but not maliciously, or upon false pretenses, to make it a condition of discharging the order, that the defendant shall stipulate not to bring any action, on account of the arrest, against the plaintiff (Bank of U. S. v. Jenkins, 18 Johns. 303, 308 ; Brophy v. Rodgers, 7 N. T. Leg. Obs. 152; Northern Railroad Company of France v. Carpentier, 4 Abb. Pr. 47, 53 ; Merchants’ Bank of New Haven v. Dwight, 13 How. Pr. 366, 371; Rigney v. Tallmadge, 17 Id. 556, 568).
IV. A fortiori the State should have power to protect complainants for public offenses from a similar annoyance. ° When a prosecution has been conducted as far as an indictment, there is a presumption of probable cause so strong as abundantly to justify a refusal to listen further to the controversy, even if the criminal proceedings are stopped. The prosecutor must, before he has carried his case thus far, have convinced both the district-attorney and the grand jury that his motives were good, that the accused party was probably guilty, that the public good required an investigation of the case, and that the prosecution served public and not private ends. Under our system, in which practically every nolle prosequi is entered with the concurrence and approval of the court (since the attorney-general rarely interferes), the nolle prosequi is either entered at the request of the prisoner (in which case he certainly has no right to complain), or if *230 it is entered against Ms will, it is done because the district-attorney, who is a sworn and impartial officer representing only the public interest, is satisfied that the public good does not require the prosocution to proceed farther; and because the court, which is still more impartial, is also satisfied that such a proceeding will, upon the whole, promote the ends of justice. There is no other proceeding by which the district-attorney and the court together' can prevent the bringing of spiteful and unfounded actions, for malicious prosecution. If tMs proceeding does not prevent such actions from being brought, then the public interest clearly demands that some form of proceeding should be invented for that purpose, for, at the present day, the unwillingness of private citizens to prosecute public offenses is one of the crying evils of the time; and it is an evil wMch will be greatly increased if it is impossible for the public authorities to protect citizens from further annoyance when indictments cannot be pressed on account of technical or substantial difficulties. Thus it is a very common occurrence for witnesses to run away or die after indictments have been found, and so to make conviction impossible, although no moral doubt of guilt exists. Must the complainants in all such cases be necessarily subjected to the annoyance and expense of actions for malicious prosecution, themselves malicious, and instituted only for the purpose of extortion % Is our law so defective that there is no power in the court, or the prosecuting officers, or both combined, to give protection in such a case \ We insist that it is not; and that the entry of a nolle prosequi has always been considered to afford such relief. Certainly it has always been taken for granted in this State that it was a bar to an action for malicious prosecution ; and the common sense of the entire profession for a hundred years in this State, and for two hundred years in England, has acquiesced in this conclusion. .
*231 V. The American law has, on grounds of public policy, transferred both the responsibility for, and control of, criminal prosecutions to a grand jury and State’s attorney. 1. Our law allows no “criminal in-formations” (as in England). No man can be accused by indictment, except on the oaths of the grand jury ; and the issue thus raised should not be tried in a private suit for damages until tried before a petit jury by the State. 2. The State’s attorney has the sole power to prosecute ; and private counsel have no power to determine whether the prosecution shall proceed or not. 3. Tinder this system, the function of the citizen is that of informer and witness—not in any proper sense that of prosecutor. The designation “prosecutor,” sometimes used, is borrowed from the English law, as a traditional designation merely. 4. It results from these features of our criminal procedure, that the public interest and right should be protected or finally barred, before the indictment can be questioned in a private action.
VI. The fact that there is no precedent for such an action, when there must have been many occasions for bringing it, if maintainable, is a strong argument against it (Anthony v. Slaid, 11 Metc. (Mass.) 291; Wellington v. Small, 3 Cush. (Mass.) 148; Seehorn 73. Darwin, 1 Const. 8. C. 196 ; Webb v. Rome, &c. R. R. Co., 49 N. Y. 426; Witterbottom v. Wright, 10 M. & W. 109).
VII. This is not an action on “newfacts” within the exception to the foregoing rule. It is attempting to establish a new principle within the rule (See Pasley v. Freeman, 3 T. R. 63, per Ashurst, J.).
VIII. To the maxim that “every wrong should have a remedy” we reply: 1. This maxim is always *232 limited. 2. It is quite clear that there is another remedy of a more efficient character; for a malicious prosecution cannot be sustained without perjury, and for perjury there is an unquestionable and effective remedy in the way of criminal prosecution. If it is said that this does not afford relief in damages for a great wrong, we answer, that if the original prosecution should be made successful by means of perjury, that would be a still greater wrong, and yet it is indisputable that for this wrong no damages can be recovered (Smith v. Lewis, 3 Johns. 157, and cases cited ; Bostwick v. Lewis, 2 Day, 447 ; Monroe v. Maples, 1 Root, 553. And see Willington v. Stearns, 1 Peck, 497, 500 ; Eyres v. Sedgwick, Cro. Jac. 601; Rex v. Best, 6 Mod. 137, 185 ; Phelps v. Stearns, 4 Gray, 105).
IX. It is, therefore, not at all- unreasonable that when a less wrong has been committed, to wit, a mere prosecution not resulting in an unjust conviction, the court and the prosecuting officer together should have a discretion to suspend the proceedings in such manner as to require the party claiming to be injured to proceed by way of a criminal prosecution itself, instead of by a civil suit. If it is said that stronger proof is required upon an indictment for perjury that in an action for damages, the answer to that is, that it is so much the more reason for requiring one who prosecutes against the judgment of the court and the district-attorney, to adopt that form of proceeding. He ought to make his case clear, beyond the shadow of a doubt, in order to justify his bringing any case into court under such circumstances.
Eleventh. Even if the doctrine of the cases cited on the part of the plaintiff from Indiana courts should be accepted as law, yet the plaintiff has not brought himself within the range of those decisions, because there a judgment discharging the plaintiff from the indictment was specially pleaded, and here there is no such alie *233 gation. I. The discharge does not follow as a legal inference from the fact of the entry of a nol. pros.,,and . it is indispensable that the discharge should be pleaded (State v. Howard, 15 Rich. Law, 274, 280; State v. Lopez, 19 Mo. 254; State v. Haskett, 3 Hill S. C., 95 ; See Chapman y. Woods, 6 Blackf. 504).
II. Mills v. McCoy (4 Cow. 410), and Murray v. Lackey (2 Murphy [N. C.] 368), were cited on plaintiff’s brief as holding that “ entry of a nolle prosequi being an end of the prosecution, the defendant’s discharge follows as a legal consequence.” Neither case contains such a ruling. In Mills y. McCoy, the accused had been acquitted by verdict. In Murray y. Lackey, the accused had been discharged by operation of law, and there was no nol. pros, in the case.
By the Court.—Barnard, J. It was essential to the maintenance of this action that the complaint should aver that the criminal prosecution alleged to have been instituted and prosecuted by defendant against the plaintiff, has been terminated in favor of the plaintiff. This averment has no reference to the merits. It is a rule, doubtless, based upon the impropriety of permitting such an action while the prosecution complained of was proceeding to final adjudication in the proper court. It would be unseemly to permit an action for malicious prosecution, which might be presented for trial before the action on which it was based was tried, and still more unseemly to permit the action, after the proper court had determined the particular prosecution complained of, in favor of the party who brought the same.
After it is established that the action for malicious prosecution may be brought, the fact of the termination of the prosecution, on which the action rests, has no further relevancy. The plaintiff must then prove that *234 the prosecution was instituted by the defendant against the plaintiff without probable cause, and maliciously.
The prosecution complained of in this action as falsely and maliciously made, was a criminal prosecution. The plaintiff avers that the defendant falsely accused him of a criminal libel, and that he made the accusation maliciously. The criminal charge resulted in an indictment, and the complaint avers that the prosecution thereof has been terminated in plaintiff’s favor by the entry of a nolle prosequi, on motion of the district-attorney of the county where the indictment was pending and triable, and with leave of the court; that the motion was made “after consulting with defendant, and in compliance with his request.” I think this was a sufficient averment of the termination of the criminal charge in favor of the plaintiff. The district-attorney of Kings county was charged with the duty of the prosecution. The defendant made his complaint with reference to this fact. The district-attorney, at the request of the defendant, asked the court for leave to abandon the prosecution of the criminal charge against the plaintiff, and the court granted the motion, and the final order is entered. What is needed further to sustain the averment that the particular charge on which the action is brought, is ended and in favor of the plaintiff % He asks for a trial, and the court and district-attorney, with defendant’s concurrence, instead of a trial, order the entry of a nolle prosequi on the indictment. In other words, the district-attorney asks leave to abandon the prosecution, and the court says he may. If the action complained of as malicious had been a civil action, an averment that a plaintiff had asked leave of the court to abandon it, and that such leave had been granted, would have been sufficient. The district-attorney acts for the people in criminal cases, except that he must have leave of the court to enter the nolle prosequi. Where this leave is obtained *235 and the order is entered, it is a record promise by the people, that the indictment will be no farther prosecuted.
I think the judgment at special term should be reversed, and the demurrer overruled, with costs.
GtILBeet, J., concurred.
September, 1876. Motion to change place of trial.
Defendant served a verified answer admitting that he went before the grand jury and there testified that certain criminal libels upon him were false; also denying he ever requested a not. pros. The answer also put in issue all the other allegations of the complaint, and averred the truth of said testimony, and that the prosecution was on reasonable and probable cause. Defendant subsequently moved to change the place of trial to some northern county of the State, because a fair and impartial trial could not be had in Kings. The main grounds stated on the moving affidavits were the difficulty of obtaining jurors who had not formed an opinion one way or the other, by reason of the prolonged trial—nearly six months in duration—in the action of Tilton against the same defendant; and by reason also of “statements,” “interviews,” &c., emanating from the present plaintiff, and published in the journals in New York and Brooklyn.
Before the motion was heard, plaintiff, under his right to amend once as of course, served an amended complaint, changing the place of trial to New York.
The motion came on to be heard at special term in Kings county.
Mr. Pryor took the preliminary objection, that the amendment changed the place of trial to New York, and that no motion could therefore heard in Kings.
Mr. Shearman, for the motion, cited Toll v. Cromwell, 12 How. Pr. 79 ; and insisted that the rights of a moving party could not be defeated by such a device.
*236 Citing People v. Potter, 47 N. Y. 375; People v. Draper, 15 Id. 532 ; People v. Gaul, 44 Barb. 98 ; People v. Utica Ins. Co., 15 Johns. 358 ; Jackson v. Collins, 3 Cow. 89; Dresser v. Brooks, 3 Barb. 429. The question is not of jurisdiction; there is but one supreme court, and the action is in one county as truly as in the other (Blackmar v. Inwager, 5 How. Pr. 367; Tracy v. Tallmadge, 1 Abb. Pr. 460; Anon., 10 How. Pr. 353 ; Matter of 7th Avenue, 29 Id. 180); and an order made in a wrong county would be merely irregular (Geller v. Hoyt, 7 Id. 265 ; Wells v. Jones, 2 Abb. Pr. 20; disapproving dicta in Bangs v. Selden, 13 How. Pr. 163 ; Harris v. Clark, 10 Id. 415). Want of jurisdiction cannot be alleged of interlocutory proceedings in an action of which the court has jurisdiction (D’lvernois v. Leavitt, 8 Abb. Pr. 59).
Dykman, J. [Stated the facts, and reviewed Toll v. Cromwell, where the court held that an amendment so made, changing the place of trial from a county in which neither party resided, to that of plaintiff’s residence, superseded the motion to change to defendant’s residence, so far as it was founded on the objection that the original county was not the proper one, but did not supersede it so far as it was based on convenience of witnesses; and proceeded as follows :]—That conclusion was right for this reason: When the amendment was made, the defendants, by the proceedings already had in the action, had the right to have the place of trial changed, not only from Albany, but also from Schenectady county : and the papers upon which the motion was founded showed it. The plaintiff could not prejudice that right by the amendment of his complaint. And therefore it was proper to hear and grant the motion. Such is not the case here, for the defendant, at the time' of the amendment, had secured no rights by any proceedings already had, to have the *237 place of trial changed from the city and county of New York.
As the case is not analogous to the one under consideration, it is obvious that it is not an authority for the defendant. On the contrary, as the case holds that the amendment of the complaint deprived the defendant of the first ground of his motion, it is an authority in favor of the plaintiff on this question.
The distinction intended to be made now is this : The place of trial in this action is now the city and county of New York. At the time the motion was noticed the place of trial was the county of Kings, and the motion was properly noticed for that county. Now, as the plaintiff’s right to amend his complaint must be without prejudice to the proceedings already had, the motion might still be made and heard in Kings county, if the grounds on which the motion is based were applicable to the city and county of New York, and the place of trial could be removed on these grounds. As it cannot be so removed, and as no proceedings already had entitle the defendant to a removal of the place of trial to the city and county of New York, the motion cannot be heard in the county of Kings.
The preliminary objection is therefore sustained, .and the defendant must have leave to make his motion in New York.
Defendant then obtained, in New York, an order to show cause why the motion already made in Kings should not be granted.
Mr. Shearman, and A. J. Vnderpoel and John L. Hill, for the motion.
S. W. Fullerton and JR. A. Pryor, opposed.
Westbrook, J. This action is for malicious prosecution. The complaint charges the defendant with *238 falsely and maliciously, and without probable cause, procuring the indictment of the plaintiff by a grand jury of Kings county for the publication of certain, alleged criminal libels upon the defendant. It is conceded that the alleged libelous publication related to the well known accusations of Mr. Theodore Tilton against the defendant, and that this trial will involve the same issue with that of Tilton against Beecher, which, though continued for several months, resulted in the disagreement of a jury in the city court of Brooklyn, and also with that which has so long agitated the public mind by discussions in the public papers, and by trial in ecclesiastical courts.
The place of trial originally designated in- the complaint was the county of Kings, the locality in which both parties resided during the time of the alleged occurrence of the events to which the issues of the action relate, and in which they are charged to have transpired. When, however, notice of motion to change the place of trial from the county of Kings to one more remote from the residence of the parties was given, the plaintiff, by an amendment of his complaint, sought to remove it from the city of Brooklyn to the city of New York, as was, perhaps, his technical right to do, thus seeking to prevent the court, upon the motion then noticed, from exercising its own independent judgment as to the place best fitted to try the action with impartiality and fairness to both parties.
As notice of the present motion had already been given when the amended complaint which seeks to change the place of trial was served, and as the Code (section 172) provides that such an amendment shall be without prejudice to the proceedings already had, it follows that the court must exercise its own judgment in the selection of a place of trial, and that the action of the plaintiff in making such change can not defeat the motion of which notice was given or the discretion *239 of the court as to the proper place of such trial (Toll v. Cromwell, 12 How. Pr. 79). It is true that the plaintiff, by the amendment of his complaint has exercised a legal technical right, but as such right, by the language of the statute authorizing it, can not “prejudice . . . proceedings already had,” it is not seen how the change made can have, on the disposition of this motion, any other or greater effect than if, without the service of an amended complaint, the plaintiff in open court had—conceding the county of Kings not to be the proper place for trial—offered to consent to an order transferring it to the city of Few York. If the amendment is to have a greater effect than this, the proceedings in the action are prejudiced thereby; for by those already had, the court was empowered to decide whether or not the county of Kings was a proper place for the trial of the action, and if not, what was the proper county for such trial, which right of judgment, fairly committed to the court by the proceedings in the action, is taken away if the amendment to the complaint is to have any other effect than that which has been stated. Whilst the letter, then, of the statute giving the right to amend is conceded, it can only be conceded in the very language thereof, and that requires us to judge and decide this motion upon the pleadings as they then stood, and upon the place of trial as then fixed. Any other construction ignores plain words, and enables a party to divest a court of the discretion to fix the place of trial, having due regard to the administration of justice, with which it was fairly intrusted.
Treating this motion, then, as it stood when notice thereof was originally given, and which, by the action of the Brooklyn Special Term and the order to show cause, is now here to be heard, two questions are presented—1st. Can a fair and impartial trial be had in *240 Kings County ? and, 2nd. If it can not, to what county shall the place of trial be changed ?
Apart from the positive testimony of many affidavits contained in the moving papers, showing that the condition of public feeling in the county of Kings is such as to make the obtainment of an impartial jury therein impossible, and the partial admission, at least, of the truth thereof, which the service of the amended complaint, designating the county of Hew York as the place of trial, implies, it is apparent—from the prominent positions of the parties concerned in the charges, the very wide and continued discussion of the matters involved by the public press for a period of over two years, a long and exhausting trial of the action of Til-ton against Beecher, held in the city of Brooklyn, continuing six months, its proceedings reported day by day in the public press, read by every one, and continually and with feeling discussed, such trial resulting in the disagreement of the jury, and the various ecclesiastical investigations, also duly chronicled by the press— that the obtainment of a fair, impartial and intelligent jury in the county of Kings would be an impossibility. In addition to this, a trial, had upon the very spot of the difficulties, surrounded by the warm and bitter partisans of both parties, whose feelings would be made known in the court room and elsewhere, and the comments of the press to be read by the jury, would be so influenced by outside surroundings and influences as to make the jurors sharers in these feelings and partizans in the struggle, rather than calm and impartial searchers for truth.
Manifestly then, to my mind, the trial should not take place in the city of Brooklyn, and the motion for a change of the venue was fully justified. There is another reason also, which is to my mind a very controlling one in determining to change the place of trial, and that is that the plaintiff has written, or caused to *241 be written, from time time to time, in the newspapers, very elaborate and carefully prepared communications to establish the alleged immoral conduct and life of the defendant. It is but fair to the plaintiff to assume that these articles were written and published for the express and only purpose of inducing the public to believe in the guilt of Mr. Beecher. To think otherwise, and to ascribe to the plaintiff no motive whatever in such publications, is to insult his intelligence by supposing that he would perform great labor and incur considerable • expense for no purpose whatever. Many thousand copies of these papers were circulated in the cities of New York and Brooklyn, and it is but reasonable to believe that such communications have had more or less influence upon public opinion. If •twelve intelligent men can be found in the county of Kings, who can, as jurors, try the issues in this action with freedom from previously formed opinions, then they exist in spite of the efforts of the plaintiff, who certainly, if he has not sought to influence the result of this particular action, has at least endeavored generally to mould public sentiment against the defendant in connection with the alleged transactions out of which this action springs. It does not become a party who has done this to say, My efforts have been ineffectual,—they produced no effect. It certainly is not unjust to hold that a cause should not be tried in a locality the general sentiment of which one of the parties to the action has sought, by appeals through the public press, to control, and which he has himself selected as a place of trial. The fairness of a trial should be above and beyond suspicion, and no court should allow a trial by a jury of a vicinage the general opinion and belief of which, upon the matters involved in such trial, either party has industriously, through newspapers, sought to form. To do this would simply encourage parties, in advance of actual trial, to create prejudice and bias, in the hope of *242 benefit to follow from a legal investigation before men, some of whom, at least, might have obtained their views and judgments of a cause elsewhere than in the courtroom. The administration of justice should be subjected to no such hazard, and the party who is inconvenienced by a determination that it shall not be, can only blame the indiscretion which induced him to submit his case to the general public, with all possible art and skill, in advance of its legal presentation in the mode and manner established by law. The proper guarding of a trial by jury requires a change of the locality fixed by the plaintiff. If a fair and impartial one then be impossible, it is a contingency only, and exists in spite of efforts to the contrary, to the hazard and uncertainty of which no cause should be subjected (People v. Webb, 1 Hill, 179 ; People v. Long Island R. R. Co., 16 How. Pr. 106-111).
In the selection of a place of trial for this action other than that of Kings county, the fact that the plaintiff has already, by the service of an amended complaint, transferred it to the city of New York, has not been overlooked. As already stated, such selection cannot influence this motion any more than an offer upon the argument to locate it there could do. When notice of the present motion was given the place of trial was Kings county. That motion could not be in any way prejudiced by the amended complaint. It gave to the court full discretion to fix the place of trial; and to allow the motion to be presented and argued as if the venue was now in the city and county of New York and the effect was to change it from that place to another, would be to give to the amended complaint a force which the section allowing it expressly forbids. When the law fairly commits a discretion to the court, neither party can, by his action, .take it away, and for this reason the action of the plaintiff in amending his complaint can not succeed.
*243 In fixing a place of trial for this cause in some locality other than the county of Kings, one manifest objection to New York exists in the fact that its courts are now burdened to an extent which makes the trial of this, if not impossible, at least unjust and unfair to other litigants. Whilst this cause would be dragging its weary way for an indefinite period, interests involving millions would remain undisposed of. Issues actually arising in the great commercial metropolis, and which must be tried in its courts—vital, too, to parties —would tarry and wait for months, whilst one not arising therein, and properly triable elsewhere, was occupying the attention of its courts. This ought not to occur; and justice to others, if not to these parties themselves, who could only reach this cause in a very long period of time, must prevent the selection of New York as the place of trial.
Apart, hovever, from the reason just given, every argument against the county of Kings applies to New York. It is there where the great daily papers, which so largely give tone and color to public sentiment, are printed and published. The trial of this cause at that great centre—more, even, than in Brooklyn—would draw and attract public attention and surround it with influences antagonistic to calm inquiry and judicial investigation. Here, too, are the very papers which the plaintiff chose as his spokesmen to the public. Its pop* ulation is the very population which he addressed, whose opinions he sought to form, and whose sentiment he sought to direct. Separated only' by a river, with the residents of one very largely the business men of the other, with interests and business and social ties very closely intertwined, New York and Brooklyn make substantially a single community, and every argument against the one as the place of trial of this action applies with equal force to the other, and hence the former can not be chosen for the trial of this action.
*244 In selecting the locality in which this action is to be tried, it may canse inconvenience to witnesses to go into one of the rural counties, but I am also satisfied that very many who would be examined, were such trial either in New York or Brooklyn, can, without injury to the merits of the cause, be safely left at home. To every lawyer the fact is obvious, that, trials are oftentimes uselessly protracted by the examination of witnesses, whose evidence, which the court can not legally exclude, weighs not a feather in the scales of justice. In a country circuit, with the trial stripped of unnecessary witnesses, this cause could be readily disposed of in a few weeks, and thus great expense saved. It could be tried, too, before a jury intelligent and impartial, who, during such trial, would not be subjected to the influences which would focalize around one conducted upon the spot and scene of the transactions, and which influences exist amid that teeming population,'continually stimulated by the appeals of partizans and of the daily newspapers, as they do nowhere else. There is no occasion, however, to subject parties and witnesses to useless inconvenience and expense by compelling them to attend at any extremity of the State. The New York daily papers circulate in Franklin county as well as in those more contiguous to the city. From my knowledge of the State, I incline to the opinion that the county of Delaware will afford as fair and impartial a trial as any other. That county is, therefore, fixed as the place of trial, subject, however to the designation of some other, upon proof of any fact, now unknown to me, which renders the selection of some other more desirable. The attorneys of the defendant will prepare the proper order for settlement, and upon such settlement the suggestions of either party as to the place will be heard and determined.
No appeal was taken, and plaintiff discontinued the action.
*245 III. December. Motion for extra allowance.
Thomas G. Shearman, for the motion.
Roger A. Pryor, opposed.
Brady, J. The motion for an extra allowance in this action was pending when the bill of costs was served, and the defendant’s attorney, insisted that the costs, if to be paid, would be received only on condition that this proceeding should not be prejudiced. It is true that the representative of the defendant’s attorney then stated that he paid them unconditionally, and left the money, which was appropriated; but there was no adjustment of the costs in accordance with the rules of the court, and there was no meeting or unison of minds which made the payments so absolute as to subject the defendant to the 56th rule of this court, requiring the motion for an allowance to be made before the final adjustment of costs. The next and remaining question is, therefore, what amount of allowance should be given \ I entertain no doubt that that this is a proper case for an allowance under section 309 of the Code, or that the circumstances attending the prosecution are sufficient to justify—nay, to require—some indemnity. The defendant had not answered when the cause was discontinued,* it is true; but he had appeared and defended. He had interposed a defense by demurrer, and this was, I think, sufficient under section 309. The plaintiff succeeded upon the demurrer at general term, however, and the only labor performed in the cause, therefore, on the part of the defendant, o’f which this court can take notice, is that involved in the arguments at' special and general terms. This labor, it seems, was unnecessary, and subjected the plaintiff *246 to delay and expense. The result is that the defendant has appeared in the action and done nothing more, except to obtain extensions of the time to answer. The action was one of great importance to the parties, it is true, and if it had continued would, doubtless, have involved many serious complications; but these would have been formidable only at the trial or in its preparation. The cause had not reached that stage, as already' suggested, when it was discontinued—there was, indeed, no issue. Under the circumstances, I think a moderate fee only should be granted. This should be given, because the plaintiff, by commencing this action, rendered the employment of counsel necessary. I think $250 should be allowed.

 In Horne’s case, 20 How. State Tr. 1391, note, is a report of an argument before the attorney-general of his order to show cause why he should not enter a nolle prosequi.

 This is a mistake. See p. 263 of this vol. and errata in 7 Sun, iv.

 His original answer had been superseded by plaintiff’s service of an amended complaint, and the discontinuance was made before service of answer to the amended complaint.

 See also Ryan v. N. Y. Central R. R. Co., 35 N. Y. 210, and cases there cited; and Penn. R. R. Co. v. Kerr, 63 Penn. St. 353; Vose v. L. & C. Co., 2 H. & N. 728, 734.